916 A.2d 484 (2007)
390 N.J. Super. 557
Carol TARR, Plaintiff-Respondent,
v.
BOB CIASULLI'S MACK AUTO MALL, INC., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 2007.
Decided February 26, 2007.
*486 Resa T. Drasin argued the cause for appellant (Woehling & Freeman, attorneys; Ms. Drasin, of counsel and on the brief).
Ronald L. Lueddeke, Spring Lake, argued the cause for respondent.
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by LEFELT, P.J.A.D.
Complaining of sexual harassment in the workplace, plaintiff Carol Tarr sued defendant Bob Ciasulli and several of his wholly-owned corporations, including defendant Ciasulli's Mack Auto Mall, Inc. A jury found defendant liable for sexual harassment but did not find that plaintiff suffered any damages. On appeal to the Appellate Division, plaintiff was awarded a new trial on damages. Tarr v. Bob Ciasulli's Mack Auto Mall, Inc., 360 N.J.Super. 265, 280-81, 822 A.2d 647 (App. Div.2003), aff'd, 181 N.J. 70, 853 A.2d 921 (2004). The Supreme Court subsequently affirmed our decision and specifically held "that in discrimination cases, which by definition involve willful conduct, the victim may recover all natural consequences of that wrongful conduct, including emotional distress and mental anguish damages arising out of embarrassment, humiliation, and other intangible injuries." Supra, 181 N.J. at 82, 853 A.2d 921.
Upon retrial, a jury awarded plaintiff $25,000 in compensatory damages and $85,000 in punitive damages. The trial judge awarded plaintiff $165,229.39 in attorney's fees, $7,689.20 in costs, and added $7,930.14 in pre-judgment interest, entering a total judgment of $290,848.73. This time, defendant's appeal challenges (1) the attorney's fees and costs awarded (2) the compensatory damage award because the judge precluded defendant from introducing evidence of plaintiff's extramarital affair with a co-worker; and (3) the punitive damage award because (a) defendant was out of business and had no assets, (b) the court failed to reduce or eliminate the award under the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17 (the Act), and (c) the trial court instructed the jury to consider deterrence of others in deciding the amount of the award. We affirm the compensatory damage award and the attorney's fees and costs awards, except for the fee awarded by the trial court for plaintiff's appearance in the Supreme Court. We vacate the punitive damage award and remand for retrial on the amount of the award because the Act prohibits enhancing a punitive damage award for general deterrence purposes.

I.
Preliminarily, we note that because of the issues raised on this appeal, it is not necessary to detail the pervasive and extensive sexual harassment that plaintiff endured, which was fully explicated in the Supreme Court decision. Tarr, supra, 181 N.J. at 74-76, 853 A.2d 921.
To place defendant's first argument in factual context, we need only to *487 explain that defendant wanted to introduce evidence of plaintiff's extra-marital affair with a co-worker. Defendant wished to present this evidence because defendant contended it was the affair and not the sexual harassment that was the cause of any emotional distress for which plaintiff sought compensation. The trial court precluded evidence of the affair because its probative value was substantially outweighed by undue prejudice, but permitted evidence establishing that plaintiff was having marital difficulties during this period. Defendant argues that this ruling improperly impeded its defense.
The trial court is granted broad discretion in determining whether the probative value of any evidence is substantially outweighed by undue prejudice. Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492, 734 A.2d 1147 (1999) (citing State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982)). Consequently, we will not reverse decisions pursuant to N.J.R.E. 403 "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide of the mark that a manifest denial of justice resulted." Ibid. That is not what occurred here.
The court recognized that the jury was permitted to hear that plaintiff was "having marital difficulties at the time." The evidence of marital difficulties was sufficient for defendant to make its point. Other than the existence of the affair, defendant had no other evidence to submit, but sought to explore the issue in cross-examination of plaintiff. Defendant made no proffer of any evidence that, in any way, linked the affair to plaintiff's distress. Under these circumstances, we cannot find an abuse of discretion.

II.

A.
With regard to the punitive damage award, defendant first contends that no award was warranted because defendant Mack Auto Mall was completely out of business and without any assets.
There is no question that defendant's financial condition is a relative factor in all punitive-damages awards. Herman v. Sunshine Chem. Specialties, 133 N.J. 329, 339, 627 A.2d 1081 (1993). "In assessing exemplary damages, a jury must take into consideration the wealth of the defendants." McDonough v. Jorda, 214 N.J.Super. 338, 349, 519 A.2d 874 (App. Div.1986), certif. denied, 110 N.J. 302, 540 A.2d 1282 (1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989).
However, the "financial condition of the defendant," which was submitted to the jury in this case, is only one factor in the determination. N.J.S.A. 2A:15-5.12(c)(4). Besides the defendant's financial condition, "the trier of fact must also consider all relevant evidence," in setting the amount of damages including, for example, the duration of the misconduct and whether defendant was aware that "serious harm would arise" from the misconduct. Id. at 5.12(c)(1). Furthermore, "defendant's financial condition must be measured at the time of the wrongful conduct." Baker v. Nat'l State Bank, 161 N.J. 220, 232, 736 A.2d 462 (1999). Accordingly, we find no error here.

B.
Again relying essentially on the fact that defendant was out of business, it argues that the court should have found the jury award on punitive damages unreasonable and unjustified pursuant to the Act.
The relevant statutory provision requires the trial judge before entering a judgment to "ascertain that the award is *488 reasonable in its amount and justified in the circumstances of the case." N.J.S.A. 2A:15-5.14(a). The court must make these determinations "in light of the purpose to punish the defendant and to deter that defendant from repeating such conduct." Ibid. The statute further provides that "[i]f necessary to satisfy the requirements of this section, the judge may reduce the amount of or eliminate the award of punitive damages." Ibid.
The trial court considered defendant's argument upon defendant's motion for a new trial and reduction of the punitive damages award. The judge found that the $85,000 award was not excessive considering the $25,000 compensatory award and defendant's egregious conduct toward plaintiff, which had been confirmed by two juries. The court's decision not to reduce this award is not an abuse of discretion. See Maudsley v. State, 357 N.J.Super. 560, 590, 816 A.2d 189 (App. Div.2003) (citing Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995)).

C.
Defendant also challenges the trial court's punitive damage jury instruction, which advised the jury that its award was "to punish the defendant and to deter the defendant and others from similar future wrongful conduct."[1] Defendant claims that the Act eliminated the deterrence of others from the purposes for such damages.
The State has a legitimate interest "in punishing unlawful conduct and deterring its repetition." BMW of N. America, Inc. v. Gore, 517 U.S. 559, 568, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809, 822 (1996). The Act provides that the purpose of a punitive damage award is "to punish the defendant and to deter that defendant from repeating such conduct." N.J.S.A. 2A:15-5.14. The Act defines punitive damages as "exemplary . . . damages awarded against a party in a civil action because of aggravating circumstances in order to penalize and to provide additional deterrence against a defendant to discourage similar conduct in the future." N.J.S.A. 2A:15-5.10.
The Model Jury charge on punitive damages contains a note recognizing that the Act may have "eliminated general deterrence of others as a basis for imposing punitive damages." Model Jury Charge (Civil) 6.20A, note 3. The note states that such purpose was "recognized under the common law, see, e.g., Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48-49, 477 A.2d 1224 (1984)." Ibid. The note further stated, however, that "[u]ntil this issue is addressed at the appellate level, trial judges will need to decide whether it is permissible under the [Act] to charge the jury on deterrence of others and permit counsel to argue that theory of punitive damages to the jury." Ibid.
Plaintiff argues that several cases decided since the Act was passed in 1995 have confirmed that deterrence of others remains one of the purposes of punitive damages. In Baker, supra, 161 N.J. at 226-27, 736 A.2d 462, cited by plaintiff as an example, the Court stated "New Jersey courts have consistently adhered to the principle that punitive damages are meant to punish a wrongdoer's egregious conduct and to deter that wrongdoer and others from engaging in such conduct in the future." The Court went on and stated that "[t]o achieve that goal, our courts have held that it is the wrongdoer who is to be punished, and it is the wrongdoer (among others) *489 whose future conduct is to be deterred." Ibid. See also e.g., Lockley v. Dep't of Corrections, 177 N.J. 413, 430, 828 A.2d 869 (2003) (citing Abbamont v. Piscataway Bd. of Educ., 138 N.J. 405, 429, 650 A.2d 958 (1994)) (stating "the purposes underlying punitive damages awards [is] `to punish . . . tortfeasor[s] and to deter [them] and others from similar conduct'"); Smith v. Whitaker, 160 N.J. 221, 238, 734 A.2d 243 (1999) (stating policy of punitive damages is to punish the wrongdoer for misconduct and to deter future egregious conduct by others); Maiorino v. Schering-Plough Corp., 302 N.J.Super. 323, 695 A.2d 353 (App.Div.1997) (citing Nappe, supra, 97 N.J. at 48-49, 477 A.2d 1224)(stating "[p]unitive damages serve a twofold purpose: first, to punish egregious misconduct, and second, to deter the offender and others from repeating it").
The cases cited by plaintiff do support the view that one of the goals of punitive damages under the common law was to deter others as well as the defendant from engaging in similar wrongful conduct. See also Restatement (Second) of Torts § 908 (1979). However, none of the cases have focused on whether the Act has modified the common law on this issue. In fact, Baker, which was cited by plaintiff and relied upon by the trial court in support of the deterrence-of-others-charge, specifically noted that the Act was "not applicable to this cause of action (which occurred before the act's effective date)." Baker, supra, 161 N.J. at 229, 736 A.2d 462. See also Lockley, supra, 177 N.J. at 428, 828 A.2d 869 (recognizing that the Act "had been enacted after the commencement of the action"); Whitaker, supra, 160 N.J. at 240, 734 A.2d 243 (recognizing that the Act "does not govern our disposition of this appeal").
"The Legislature's purpose in enacting the Act was to establish more restrictive standards with regard to the awarding of punitive damages." Pavlova v. Mint Mgmt. Corp., 375 N.J.Super. 397, 403, 868 A.2d 322 (App.Div.), certif. denied, 184 N.J. 211, 876 A.2d 285 (2005). The Act contains specific limitations on the amount of punitive damages that may be awarded. N.J.S.A. 2A:15-5.14(b). Except in Law Against Discrimination cases, the Act limits punitive damages to "an amount [not] in excess of five times the liability of that defendant for compensatory damages or $350,000, whichever is greater." Ibid. Lockley, supra, 177 N.J. at 428, 828 A.2d 869. Under the Act, a nominal damage award will not support an award of punitive damages. N.J.S.A. 2A:15-5.13(c). Significantly, upon reviewing a jury award for compliance with the Act's purposes prior to entering judgment, the Legislature authorized the trial judge to reduce or eliminate the award but not increase the award. N.J.S.A. 2A:15-5.14(a).
A Sponsor's Statement to S. 292, a precursor to the Act, declares that the bill was "intended to limit the use and amount of punitive damages which may be awarded in a lawsuit." Sponser's Statement, 206-292, 1st Sess. (N.J.1994). The Statement recognized that "[t]he awarding of punitive damages was originally intended to punish defendants for malicious or wanton actions and to deter others from engaging in similar activities. However, many persons believe that in recent years these damages have been awarded indiscriminately for actions that are merely careless." Ibid. The sponsor further noted that the increase in these claims "contributed to the high cost of litigation." Ibid. That particular statement went on to note that "[i]n any action in which there are two or more defendants, an award of punitive damages must be specific as to each defendant and each defendant is liable only for the amount of *490 award made against that defendant." Ibid.
From this statement we infer that the Legislature was aware of the common law purpose of punitive damages to deter others as well as the defendant from engaging in similar misconduct in the future. Yet the Assembly Insurance Committee's Statement to S. 1496, a later incantation of the bill, stated that the purpose of punitive damages under the Act was "to punish the defendant and to deter that defendant from repeating such conduct." Sponser's Statement, 206-1496, 2nd Sess. (N.J.1995). It was this language which found its way into the Act, in the sections defining "punitive damages" and in determining the award. N.J.S.A. 2A:15-5.10, 5.14.[2] The Act clearly has reduced the deterrence implicit in the punitive damages concept under the common law. See William Matsikoudis, Tort Reform New Jersey Style, 20 Seton Hall Legis. J. 563, 591 (1996).
We recognize, of course, that any punitive damage award, by its exemplary nature, may generally deter others from similar wrongdoing. There is a difference, however, between general deterrence, inherent in any punitive damage award, and permitting the jury to enhance general deterrence by increasing the award beyond the amount required to specifically deter the defendant. An award that is enhanced to deter others who could be completely unconnected with plaintiff or with defendant's wrongdoing can be viewed as a windfall for plaintiff and excessively punitive toward defendant. The amount of the award must be reasonable considering "the degree of reprehensibility of the defendant's conduct." BMW of N. America, supra, 517 U.S. at 575, 116 S.Ct. at 1599, 134 L.Ed.2d at 826.
In this instance, for example, plaintiff argued to the jury that the amount of the punitive damage award presents an "opportunity to send a message[3] to deter this particular defendant and others, whether they be other non-automotive businesses or automotive businesses from this type of conduct." Furthermore, when acknowledging that defendant was out of business, toward the end of his summation, counsel emphasized that the punitive damage award was to be "a deterrent to this defendant. It is a deterrent to others out there."
In our view, this argument constituted plain error under the Act, and to the extent the argument was condoned by the jury instructions the charge was also contrary to the Act. Consequently, we hold that while general deterrence remains inherent in the nature of exemplary damages, the Act does not permit counsel to urge the jury to increase a punitive damage award in order to enhance the general deterrence of others. In awarding punitive damages on the remand, the jury must focus on an amount reasonably sufficient to "punish the defendant and to deter that defendant from repeating such conduct." N.J.S.A. 2A:15-5.14(a). See N.J.S.A. 2A:15-5.12 (detailing some of the relevant evidence to be considered).
*491 Because plain error in the amount of the punitive damage award occurred, we regrettably must return this matter once more for retrial before a new jury. Since we find no error in the compensatory damage award or the decision to award punitive damages, however, we limit the retrial to determining the amount of punitive damages.

III.
Defendant also challenges the $165,229.39 in attorney's fees and $7,689.20 in costs that were awarded by the trial court. We will not disturb such awards unless the trial court clearly abused its discretion. See Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 443-44, 771 A.2d 1194 (2001).
In this matter, the Supreme Court left the award of counsel fees and costs to the trial court. Tarr, supra, 181 N.J. at 85, 853 A.2d 921. We find no clear abuse of discretion in the award of fees or costs except the court seems to have included $23,650 for plaintiff's appearance before the Supreme Court. In the absence of a referral from the appellate court to the trial court, the trial court has no authority to award such fees. R. 2:11-4. Moreover, plaintiff failed to request such fees from the Supreme Court "within 10 days after the determination of the appeal." Ibid. Consequently, upon the remand, the trial court shall amend the judgment by removing that portion of the attorney's fee from the award. We take no position on whether fees may be awarded by the Supreme Court despite plaintiff failing to comply with the ten day time frame of the pertinent rule.

IV.
In conclusion, the compensatory damage award and the decision to award punitive damages are affirmed. The punitive damage award is vacated and remanded for retrial on the proper amount. The judgment shall be modified to remove $23,650, relating to plaintiff's Supreme Court appearance, from the attorney's fee award.
Affirmed in part, vacated in part, and remanded for further proceedings not conflicting with this decision.
SAPP-PETERSON, J.S.C. (temporarily assigned), dissenting.
I disagree that the modest punitive damages awarded in this case should be remanded for a new trial. As the majority recognizes, the Punitive Damages Act (PDA), N.J.S.A. 2A:15-5.9 to -5.17, excludes Law Against Discrimination (LAD) cases from the limitation on the amount of punitive damages. N.J.S.A. 2A:15-5.14(c). In my view, this statutory exclusion furthers the LAD's overarching goal of "nothing less than the complete eradication `of the cancer of discrimination.'" Fuchilla v. Layman, 109 N.J. 319, 334, 537 A.2d 652, cert. denied, Univ. of Med. & Den. v. Fuchilla, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988) (quoting Jackson v. Concord Co., 54 N.J. 113, 124, 253 A.2d 793 (1969)). I therefore believe the Legislature would not want our strong public policy against discrimination undercut by preventing juries from considering general deterrence as well as specific deterrence in punitive damages awarded under the LAD. The interpretation advanced by the majority runs counter to the mandate that the LAD be liberally construed to effectuate its remedial purposes. Dale v. Boy Scouts of Am., 308 N.J.Super. 516, 706 A.2d 270 (App.Div.1998), aff'd, 160 N.J. 562, 734 A.2d 1196 (1999), rev'd and remanded, 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). Thus, for example, in Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 735 A.2d 548 (1999), the court held that plaintiffs were entitled to recover punitive damages *492 against public entities despite the Tort Claims Act's ban on such awards. Id. at 132, 735 A.2d 548. Similarly, in Potente v. County of Hudson, 187 N.J. 103, 900 A.2d 787 (2006), the Court rejected the holdings in Hurley v. Atlantic City Police Dep't[4] and Coleman v. Kaye[5] that "prejudgment interest will not be awarded against a public entity `except where provided by statute.'" Potente, supra, 187 N.J. at 114, 900 A.2d 787.
The Legislature has declared "that practices of discrimination against any of its inhabitants . . . are matters of concern to the government of the State, and that such discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundation of a free democratic State." N.J.S.A. 10:5-3. In light of this declaration, it is inconceivable that the Legislature intended to prohibit juries from considering general deterrence as an aspect of punitive damages in LAD cases.
Although the PDA does not specifically include general deterrence in its definition of punitive damages, consideration of general deterrence is not expressly excluded. Further, subsequent case law construing the purposes of punitive damages awarded under the LAD continue to hold that deterrence of others remains one of its objectives. See Lockley v. Dep't of Corrections, 177 N.J. 413, 430, 828 A.2d 869 (2003) (holding purposes underlying punitive damages awards include deterrence of the tortfeasor and others from similar conduct). See also Baker v. Nat'l State Bank, 161 N.J. 220, 226, 736 A.2d 462 (1999) and Mancini v. Twp. of Teaneck, 349 N.J.Super. 527, 568, 794 A.2d 185 (App.Div.2002), aff'd as modified on other grounds, 179 N.J. 425, 846 A.2d 596 (2004). Unless and until the Legislature expressly states otherwise deference should be accorded to judicial construction of the purposes of punitive damages awarded under the LAD. See Green v. Jersey City Bd. of Educ., 177 N.J. 434, 445, 828 A.2d 883 (2003) (holding that notwithstanding the Tort Claims Act's bar against the award of punitive damages against a public entity, punitive damages may be awarded appropriate in CEPA cases).
In any event, even if the majority has correctly interpreted the Legislative intent regarding the PDA, and the distinction they assert has been made between general and specific deterrence, I disagree that this matter needs to be remanded. Considering the pervasive and extensive sexual harassment that plaintiff endured, the punitive damages award of $85,000 appears quite modest. There is little evidence, beyond plaintiff's attorney's very brief argument, that the award included any amount for the deterrence of others, especially because the judge's charge did not specifically authorize such an enhancement by the jury. I would find that the punitive damages award was reasonable and not remand this matter, which has already had a tortuous procedural history, for yet another hearing.
Accordingly, I respectfully dissent.
NOTES
[1] The Model Charge for punitive damages also states "Punitive damages are awarded as a punishment of the defendant and as a deterrent to others from following his or her example." Model Jury Charge (Civil) 6.20A.
[2] In the Uniform Law Commissioners' Model Punitive Damages Act, which was approved in 1996, the jury may award punitive damages when "necessary to punish the defendant for the conduct or to deter the defendant from similar conduct in like circumstances." Unif. Law Comm'rs Model Punitive Damages Act § 5(3) (1996).
[3] Usually exhorting the jury to send a message is an improper argument. See e.g., State v. Rose, 112 N.J. 454, 520-21, 548 A.2d 1058 (1988). We decline to decide, at this time, whether such an argument would be proper when setting the amount of a punitive damage award.
[4] 174 F.3d 95 (3d Cir.), cert. denied, 528 U.S. 1074, 120 S.Ct. 786, 145 L.Ed.2d 663 (2000).
[5] 87 F.3d 1491 (3d Cir.1996), cert. denied, 519 U.S. 1084, 117 S.Ct. 754, 136 L.Ed.2d 691 (1997).