943 A.2d 866

CAROL TARR, PLAINTIFF–RESPONDENT v. BOB CIASULLI'S
MACK AUTO MALL, INC., DEFENDANT–APPELLANT.

Argued January 22, 2008—Decided March 27, 2008.

*Resa T. Drasin*, argued the cause for appellant (*Woehling & Freeman*, attorneys).

*Ronald L. Lueddeke*, argued the cause for respondent (*Lueddeke Law Firm*, attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

This case is before us for a second time on an appeal by defendant, Bob Ciasulli's Mack Auto Mall, Inc. *See Tarr v. Bob Ciasulli's Mack Auto Mall, Inc.*, 178 *N.J.* 29, 834 *A.*2d 403 (2003). The issue this round is whether the Legislature, in enacting the Punitive Damages Act, *N.J.S.A.* 2A:15–5.9 to –5.17 (Act), intended punitive awards to focus only on deterrence of the specific defendant that committed the wrongdoing as opposed to deterrence "of

others" generally. *Tarr v. Ciasulli's Mack Auto Mall, Inc.,* 390 *N.J.Super.* 557, 572, 916 *A.*2d 484 (App.Div.) (dissenting judge finding no clear legislative intent to preclude consideration of general deterrence when setting amount of punitive damages awards), *certif. granted,* 192 *N.J.* 72, 926 *A.*2d 856 (2007) (limiting certification to whether Act eliminated jury consideration of deterrence to others when defendant is no longer in business and is not subject to further deterrence).

■ The trial court held that general deterrence could be considered by the jury. Therefore, plaintiff argued in summation that the jury should award punitive damages to "send a message to deter this particular defendant and others," and the court charged the jury that it could enhance an award of punitive damages against defendant to deter others from wrongdoing similar to defendant's. The jury awarded plaintiff $85,000 in punitive damages. On appeal, however, the Appellate Division, in a divided opinion, reversed the punitive damages award. *Id.* at 570, 916 *A.*2d 484. The majority held that, in fixing the amount of a punitive damages award, a jury only may aim for deterrence of the specific defendant. *Id.* at 569, 916 *A.*2d 484. In reaching that conclusion, the Appellate Division majority examined the language of the Act and its legislative history, concluding "that while general deterrence remains inherent in the nature of exemplary damages, the Act does not permit counsel to urge the jury to increase a punitive damage award in order to enhance the general deterrence of others." *Ibid.*[1]

---

[1] The dissenting member of the panel did not find in the Act clear evidence of legislative intent to exclude general deterrence considerations when a jury determines the amount of a punitive damages award. *Tarr, supra,* 390 *N.J.Super.* at 572, 916 *A.*2d 484. Further, the dissent drew support from case law, which included mention of general deterrence considerations, after the Act's effective date. *Ibid.* Those cases are unpersuasive evidence, however, that the Act did not intend to exclude deterrence of others when a punitive damages award is fashioned. The cases either involved controversies that preceded the Act's enactment, or were discussing other statutes—not the Act's applicability.

We agree with the Appellate Division's analysis and affirm the Appellate Division substantially on the basis of the thorough and thoughtful majority opinion crafted by Judge Lefelt. Therefore, for the reasons set forth by Judge Lefelt, this matter must be remanded, yet again, for a new trial to determine the amount of punitive damages. We add only the following to address a remaining argument in respect of the retrial that will take place.

## I.

■ Based on the now-settled legal principle that the Act allows punitive damage awards to be entered for the purpose of punishing, and thereby deterring, only the wrongdoer, defendant urges that we address whether the Act contemplates jury consideration of defendant's financial condition at the time of the judgment, or at the time of the wrongful conduct, when assessing punitive damages. If it is the latter, defendant argues that no retrial should take place.[2] We are told that defendant, Bob Ciasulli's Mack Auto Mall, Inc., although not dissolved, is no longer a viable entity present for deterrence purposes.[3] For the reasons expressed below, we reject the either-or timing choice that defendant's argument posits in respect of the determination of its financial condition for purposes of the ability-to-pay assessment.

## II.

The Act sets forth the relevant factors that should be considered when determining the amount of a punitive damages award. It provides,

---

[2] Although defendant is the beneficiary of the Appellate Division judgment that set aside the punitive damages award entered by the jury, defendant assumes an appellant's role because it seeks to avoid any retrial on punitive damages.

[3] Indeed, we were informed at argument that separate litigation to sort out successor liability among allegedly related corporate entities is pending at the trial level. We express no opinion on the merits of that litigation as a potential means of relief for plaintiff on her judgments against defendant.

If the trier of fact determines that punitive damages should be awarded, the trier of fact shall then determine the amount of those damages. In making that determination, the trier of fact shall consider all relevant evidence, including, but not limited to, the following:

(1) All relevant evidence relating to the factors set forth in subsection b. of this section;

(2) The profitability of the misconduct to the defendant;

(3) When the misconduct was terminated; and

(4) The financial condition of the defendant.

[*N.J.S.A.* 2A:15–5.12(c).]

In respect of assessment of "the financial condition of the defendant," the argument advanced by defendant fixates on temporal considerations: whether financial condition should be measured at the time of the judgment or at the time of the wrongful conduct.

■ As the panel below correctly observed, "[t]here is no question that [a] defendant's financial condition is a [relevant] factor in all punitive-damages awards." *Tarr, supra,* 390 *N.J.Super.* at 564, 916 *A.*2d 484. Prior to the Legislature's passage of the Act, we repeatedly stated that, " '[i]n assessing [punitive] damages, a jury must take into consideration the wealth of the defendants.' " *Herman v. Sunshine Chem. Specialties, Inc.,* 133 *N.J.* 329, 339, 627 *A.*2d 1081 (1993) (quoting *McDonough v. Jorda,* 214 *N.J.Super.* 338, 349, 519 *A.*2d 874 (App.Div.1986), *certif. denied,* 110 *N.J.* 302, 540 *A.*2d 1282 (1988), *cert. denied,* 489 *U.S.* 1065, 109 *S.Ct.* 1338, 103 *L.Ed.*2d 809 (1989)); *see also Fischer v. Johns–Manville Corp.,* 103 *N.J.* 643, 673, 512 *A.*2d 466 (1986). Our decision in *Herman, supra,* clarified what constitutes a defendant's "financial condition." 133 *N.J.* at 339–42, 627 *A.*2d 1081.

The issue in *Herman* was whether the plaintiffs had met their evidentiary burden to establish the defendant's financial condition, as required by the then-extant punitive damages provisions of the products liability statute. *Id.* at 333, 339–42, 627 *A.*2d 1081 (citing *N.J.S.A.* 2A:58C–5(d) (1987), *repealed by* Punitive Damages Act, *L.* 1995, *c.* 142, § 8). Those provisions are substantially similar to the current punitive damage provisions of the Act. *See L.* 1995, *c.* 142, § 4 (codified at *N.J.S.A.* 2A:15–5.12). In order to determine what evidence is relevant to a defendant's "financial condition," we

harkened back to the purpose of awarding punitive damages, which is "to punish for the past event and to prevent future offenses." *Herman, supra,* 133 *N.J.* at 339, 627 *A.*2d 1081. In light of those dual purposes, consideration of the defendant's wealth developed in the common law to ensure that a punitive damages award is "fair and reasonable." *Id.* at 338–39, 627 *A.*2d 1081 (citing *Leimgruber v. Claridge Assocs., Ltd.,* 73 *N.J.* 450, 456, 375 *A.*2d 652 (1977)); *see also Fischer, supra,* 103 *N.J.* at 673, 512 *A.*2d 466 (specifying common law factors for assessing punitive damages).

> [T]he underlying rationale of punitive damages seems to demand consideration of a defendant's wealth, since a sum that would deter a poor person may have little or no impact on a rich person. Consideration of a defendant's wealth is relevant both to preventing the imposition of an especially devastating fine, and to determining the amount that will sufficiently punish and deter.
>
> [*Herman, supra,* 133 *N.J.* at 341, 627 *A.*2d 1081 (citations and internal quotation marks omitted).]

The Legislature embraced that rationale by including consideration of a defendant's wealth in the punitive damages provisions of the products liability statute. *Id.* at 339–40, 627 *A.*2d 1081 (citing punitive damages provisions of product liability statute, *N.J.S.A.* 2A:58C–1 to –7); *see also N.J.S.A.* 2A:15–12 (incorporating defendant's wealth as relevant consideration also for purposes of punitive damages awards). Accordingly, we held in *Herman, supra,* that the term "financial condition," as it appeared in the products liability statute, "roughly means the [defendant's] ability to pay" the punitive damages award. 133 *N.J.* at 345, 627 *A.*2d 1081.

That said, the opinion clarified that "that ability does not necessarily equate with net worth. Depending on the facts of a case, a defendant's income might be a better indicator of the ability to pay." *Ibid.* Applying the facts involved in *Herman,* we concluded that there was sufficient evidence in the record about the defendant corporation's "financial condition" based on the testimony of its president that he had sold the company's stock for $750,000. *Id.* at 346, 627 *A.*2d 1081 ("A sale of the entire business in the fairly recent past, in an arms-length transaction between sophisticated individuals, is considered practically conclusive evi-

dence of value as of the time of the sale." (quoting Robert W. Hamilton, *Fundamentals of Modern Business* § 11.8.1 (1989) (internal quotation marks omitted))).

Our holding in *Herman* that "financial condition" means the defendant's "ability to pay" a punitive damages award is consistent with the approach of several other states. For example, in *Motorola Credit Corp. v. Uzan*, 509 *F*.3d 74, 82–84 (2d Cir.2007) the Second Circuit Court of Appeals held that the district court properly considered the defendant's ability to pay when applying Illinois state law to impose punitive damages. The court explained,

> [A]n award which bankrupts the defendant is excessive. Punitive damages should be large enough to provide retribution and deterrence but should not be so large that the award destroys the defendant. Thus, before a court can gauge the award, it must first gauge the financial position of the wrongdoer.... Simply stated, the amount of the award should send a message loud enough to be heard but not so loud as to deafen the listener. A deafening award is excessive.
>
> [*Id.* at 82 (quoting *Hazelwood v. Ill. Cent. Gulf R.R.*, 114 *Ill.App.*3d 703, 71 *Ill.Dec.* 320, 450 *N.E.*2d 1199, 1207 (1983) (alteration in original) (emphasis and internal quotation marks omitted)).]

*See also Zuckerman v. Robinson*, 846 *So.*2d 1257, 1260 (Fla.Dist. Ct.App.2003) ("[Punitive] damages may not exceed the defendant's current ability to pay them."), *review denied*, 868 *So.*2d 524 (Fla.2004); *Stroud v. Lints*, 790 *N.E.*2d 440, 447 (Ind.2003) ("The economic wealth of a defendant tends to show ... the point at which an award of punitive damages becomes an amount which will deter and punish the defendant.") (quoting *Ramada Hotel Operating Co. v. Shaffer*, 576 *N.E.*2d 1264, 1267–68 (Ind.Ct.App. 1991) (alteration in original) (internal quotation marks omitted)); *Lunsford v. Morris*, 746 *S.W.*2d 471, 472 (Tex.1988) ("A defendant's 'ability to pay' bears directly on the question of adequate punishment and deterrence.").

### III.

Although we have affirmed numerous punitive damage awards for which the defendant's wealth was assessed at the time of entry of the judgment, in recognition that that is the time that the

wrongdoer must feel the sting of an appropriately sized punitive damage penalty, we also have recognized that it can be appropriate to consider the financial condition of the defendant at the time of the wrongful conduct. In *Baker v. National State Bank*, 161 *N.J.* 220, 223, 226, 736 *A.*2d 462 (1999), the setting was a dispute over the liability of a successor corporation for punitive damages assessed against the predecessor. It was impossible to consider the financial condition of the wrongdoing entity at the time of the wrongful conduct because the defendant had refused to produce any information about its value at the time of the wrongdoing. *Id.* at 232, 736 *A.*2d 462. In those difficult circumstances, we found it appropriate to "permit the jury to calculate punitive damages based upon the worth of a more financially-stable successor corporation that did not exist at the time of the wrongful conduct." *Ibid.* However, in the context of that fact-sensitive successor-liability dispute, we noted that, "[i]n fairness, for the calculation of punitive damages, a defendant's financial condition should be measured at the time of the wrongful conduct." *Ibid.*

█ The Appellate Division panel below relied on *Baker* when commenting that a defendant's financial condition should be measured at the time of the wrongful conduct.[4] *Tarr, supra,* 390 *N.J.Super.* at 564, 916 *A.*2d 484. That overstates the *Baker* holding, which must be viewed in its factual context. Our declaration in *Baker, supra,* that "a defendant's financial condition should be measured at the time of the wrongful conduct," reflected concern that the damages being awarded were becoming the liability of a successor entity as a matter of contract, rather than imposed by judicial mandate. 161 *N.J.* at 228, 232, 736 *A.*2d 462. Thus, the punitive award would be borne by a successor entity

---

[4] The panel ultimately concluded that defendant's inability to pay in this case should not preclude a punitive damages award because the statute specifically lists other factors that the jury can consider. *Tarr, supra,* 390 *N.J.Super.* at 564, 916 *A.*2d 484. We agree with that assessment. Evidence concerning the financial status of a defendant is simply one relevant consideration to be weighed when determining the amount of a punitive damages award. *See N.J.S.A.* 2A:15–5.12(c); *see also Motorola, supra,* 509 *F.*3d at 82–83.

"who may never have [engaged in the wrongful conduct], and who is thus unlikely to be deterred by substantial penalties." *Id.* at 227, 736 *A.*2d 462 (quoting *Musikiwamba v. ESSI, Inc.,* 760 *F.*2d 740, 749 (7th Cir.1985) (internal quotation marks omitted)). In that specific factual setting, we acknowledged that it would have been better, if it were possible, to assess the financial condition of the predecessor company that engaged in the wrongdoing in order to fashion an award that would best comport with the purposes of a punitive damages award. *Id.* at 232, 736 *A.*2d 462.

▇▇▇▇ With that said, the Act does not preclude a jury from considering a defendant's financial condition at the time of the wrongful conduct, even in cases where the issue of successor liability is not squarely before the court. Indeed, the Act directs the jury to consider the "profitability of the misconduct to the defendant" when assessing punitive damages. *N.J.S.A.* 2A:15–5.12(c)(2). That necessitates consideration of the defendant's financial condition after, and at the time of, the wrongful conduct to ensure that any compensatory damages award for the wrongdoing does not become a cost of business for the defendant. Plainly, the Act anticipates a nuanced factual examination by the jury of a defendant, including measurement of the defendant's "financial condition," when assessing punitive damages.

▇▇▇▇ In this matter, defendant's claim—that the wrongdoing corporate defendant is now a defunct organization without assets to speak of—cannot preclude plaintiff from seeking to have the jury determine the proper amount of a punitive damages award in these circumstances. In this fact-sensitive case, the jury's assessment of defendant's financial condition should include consideration of the strength of the corporate entity at the time of wrongdoing, even if it is not known whether the judgment will be collectible. A relevant consideration also will be whether defendant purposefully was stripped of assets to avoid a judgment.

▇▇▇▇ In sum, notwithstanding that the fortune of the wrongdoing corporate defendant has dissipated, plaintiff may proceed with

a retrial on the setting of a punitive damages amount in this matter. We hold that the court should direct the jury that it may consider defendant's financial condition at the time of the wrongdoing and, further, that it may consider subsequent events concerning the corporation's financial condition, including its worth at the time of judgment. Such direction will assure that the dual purposes of punitive damages—deterrence and punishment—are fulfilled, while at the same time ensuring the award's reasonableness. *See Herman, supra,* 133 *N.J.* at 338, 627 *A.*2d 1081 ("At a minimum, due process requires appellate review of the [punitive damages] award for reasonableness.").

### IV.

The judgment of the Appellate Division is affirmed, and the matter is remanded for a new trial to determine the amount of punitive damages to be awarded.

*For affirmance and remandment*—Chief Justice RABNER, and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.