**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3853-23

GEORGE HAFFERT and
TERESA DOWNEY,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

BELL TOWER CONDOMINIUM
ASSOCIATION,

      Defendant-Respondent/
      Cross-Appellant,

and

CAROL BARNOSKY,
MARTIN J. MEHL, TARA MEHL,
PAUL GLODEK, JILL GLODEK,
DOUGLAS MORRISON and
GLORIA MORRISON,

      Defendants-Respondents.

_____

Argued September 16, 2025 – Decided March 11, 2026

Before Judges Currier, Smith, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0478-17.

Dennis A. Estis argued the cause for appellants/cross-respondents (Greenbaum Rowe Smith & Davis, LLP, attorneys; Dennis A. Estis, of counsel and on the brief; Meredith C. Sherman and Joseph A. Natale, on the briefs).

Jay H. Greenblatt argued the cause for respondent/cross-appellant (Greenblatt & Laube, PC, attorneys; Jay H. Greenblatt, on the briefs).

Judith A. Schneider argued the cause for respondents (Posternock Apell PC, attorneys, join in the brief of cross-appellant/respondent Bell Tower Condominium Association).

PER CURIAM

After a remand, plaintiffs George Haffert and Teresa Downey ("plaintiffs") appeal from three Law Division orders, dated February 6, 2024 (denying plaintiffs' motion to compel documents and granting the receiver's motion for judgment), July 26, 2024 (amending a judgment), and July 30, 2024 (amending an order for counsel fees), related to their dispute with Bell Tower Condominium Association and other unit owners ("defendants") over enforcement of a 2018 settlement agreement.

On appeal, plaintiffs contend the trial court erred on remand by: denying their motion to compel additional documents; improperly adopting the appointed

receiver's financial findings; applying an incorrect interest rate to the arbitrator's award; and improperly awarding counsel fees.

We affirm the trial court's orders of February 6 and July 30. We vacate the July 26 order, and remand for proceedings consistent with this opinion.

## I.

Bell Tower Condominium ("Condominium") is in Sea Isle City. Its five residential units are in one building. The Bell Tower Condominium Association ("Association") is responsible for the operation and maintenance of the Condominium's common elements. Plaintiffs own Unit #5, the largest unit, with a 28% interest in the common elements. Defendants Carol Barnosky, Martin J. Mehl, Tara Mehl, Paul Glodek, Jill Glodek, Douglas Morrison, and Gloria Morrison (collectively, "individual defendants") own the other four units, and each hold an 18% interest in the common elements.

This is the sixth appeal arising from this contentious sixteen-year-old litigation.[1] We incorporate the relevant facts and procedural history from the

---

[1] See Bell Tower Condo. Ass'n v. Haffert (Haffert I), 423 N.J. Super. 507, 515-18 (2012) (reversing and remanding trial court order, concluding the refusal to pay a special assessment was a "housing-related dispute" under N.J.S.A. 46:8B-14(k), requiring arbitration); Bell Tower Condo. Ass'n v. Haffert (Haffert II), No. A-3330-13 (App. Div. Jan. 20, 2015) (slip op. at 17) (affirming trial court's order confirming arbitration reward, but remanding for further fact-finding

four prior opinions related to those appeals. We recite only that necessary to decide the instant matter.

The litigation dates from 2010, when the Association imposed an $80,000 special assessment on the owners. Plaintiffs refused to pay their designated share, prompting the Association to sue them, seeking payment of assessments and counsel fees. Plaintiffs counterclaimed, to compel arbitration, along with other relief. The trial court granted the Association summary judgment, finding no genuine issue of material fact as to the value of the $80,000 assessment, nor plaintiffs assigned portion of it. The trial court also found that arbitration was not required under the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -56. On direct appeal, we concluded that the

---

regarding attorney's fees), Bell Tower Condo. Ass'n v. Haffert (Haffert III), No. A-3330-13 (App. Div. July 16, 2015) (slip op. at 10) (vacating trial court's order granting attorney's fees for the Association, and remanding for entry of order for attorney's fees in Association's favor in the amount of $5,217.91); Haffert v. Bell Tower Condo. Ass'n (Haffert IV), No. A-13-21 (App. Div. Sep. 6, 2023) (slip op. at 43-45) (affirming trial court orders splitting attorney's fees equally, affirming trial court's order dismissing defendants' cross-motion for reconsideration, vacating and remanding trial court orders to instruct Gould and give effect to parties' Settlement Agreement and term sheet, and dismissing plaintiffs' challenge to Cooper Levenson attorney's fees); and Haffert v. Bell Tower Condo. Ass'n, (Haffert V), No. A-3216-22 (App. Div. Oct. 26, 2023) (appeal dismissed as withdrawn by appellant).

A-3853-23

Condominium Act, N.J.S.A. 46:8B-1 to -38, compelled arbitration. See N.J.S.A. 46:8B-14(k); Haffert I, 423 N.J. Super. at 517-518. We reversed and remanded.

After remand and a hearing, the arbitrator made findings, including but not limited to the following: every unit owner was entitled to reasonable access to the Association's financial records; plaintiffs owed 28% percent of the $80,000 special assessment, plus interest; and plaintiffs were responsible for $18,585 in counsel fees, based on their proportionate share of half the reduced "reasonable" arbitration-related legal fees, with interest at 10% per annum.

The Association moved for confirmation of the award and counsel fees. Haffert II, slip op. at 3-5. The trial court confirmed the award, then awarded the Association $20,450 in attorney's fees. After direct appeal we remanded for further findings on the counsel fees issue. Following the entry of an order on remand, we ultimately exercised original jurisdiction, vacated the trial court's fee award order, and reduced the attorney fee component to $5,217.91. Haffert III, slip op. at 2, 10.

In 2017, after continued disputes between the parties, plaintiffs sued the Association and the individual defendants. Defendants counterclaimed, alleging plaintiffs still owed significant assessments. Defendants once again sought counsel fees. In 2018 the parties settled the new litigation. Settlement terms

included appointment of Alan I. Gould as a receiver. The terms granted Gould broad authority to manage the Association and retain a CPA to: (1) review all Association finances dating back to 2010; (2) determine each unit owner's financial obligation, including attorney's fees and special assessments; (3) set annual budgets; and (4) provide financial transparency to all unit owners. Notably, the settlement agreement required each party to bear their own costs and fees, with a modest exception. The agreement also required Association board members to provide financial and other relevant documents to Gould.

Gould retained CPA George Stauffer ("the CPA"), who issued a brief report in 2019 finding that plaintiffs owed $55,414.36 in assessments. In his report, Stauffer acknowledged that he did not review Association financial records for 2010, 2011, nor part of 2012, attributing this omission to the Association's bank's retention policy. Plaintiffs disputed the sufficiency of this review and obtained their own expert, who issued a report finding plaintiffs owed a lesser amount.

After extensive motion practice, the trial court rejected defendant's motion to compel plaintiffs to pay the assessment amount identified by the receiver and the CPA. The court appointed a neutral expert, Michael Bohrer ("Bohrer"), to resolve inconsistencies between the financial experts. Bohrer

issued an opinion concluding plaintiffs should pay defendants $32,370.46 as an assessment. Haffert IV, slip op. at 12-13. After Bohrer issued his opinion, more disputes arose between the parties concerning various issues, including: enforcement of the settlement; compliance with document production; and resolution of expert fees and other costs. The trial court issued multiple orders to resolve these disputes. The parties appealed and cross-appealed those orders.

The Association argued that the trial court's authority was limited to enforcing the terms of the settlement agreement, and that it committed error by encroaching upon the receiver's role. The individual defendants argued, among other things, that plaintiffs should bear the larger share of the expert fees.

In Haffert IV, we concluded that the settlement agreement vested Gould with the exclusive power to make findings regarding the unit owners' financial obligations, and that the trial court erred by assuming a fact-finding role the parties had expressly reserved to Gould. slip op. at 22-23. We vacated seven trial court orders, and remanded for the trial court to, among other things: instruct Gould, "to the extent necessary," to (a) complete his duties under the terms of the settlement agreement, (b) address the alleged deficiencies in the CPA's report, and (c) reconsider, with adequate findings, plaintiffs' motion to compel documents under the settlement. Id. at 43-45.

A-3853-23

On remand, the trial court directed Gould to certify that he had: (a) reviewed his own CPA's report, (b) determined whether it gave full effect to the settlement agreement, (c) addressed any deficiencies in the report raised by the parties, and (d) explained whether the requirement to review all Association finances back to 2010 was enforceable or unenforceable. The court directed Gould to calculate interest and ordered the individual defendants to certify that they had turned over any evidence relating to the operation or finances of the condominium in compliance with the 2018 settlement.

The trial court denied plaintiffs' motion to compel documents and granted Gould's motion for judgment in the amount of $84,692.85, setting interest at 12%. The court also awarded the Association $55,830 in counsel fees.

On appeal, plaintiffs argue that the trial court committed error by: denying the motion to compel certain discovery; granting Gould's motion for judgment; and improperly awarding counsel fees.

II.

Appellate courts review the trial court's factual findings under a deferential standard. Balducci v. Cige, 240 N.J. 574, 595 (2020). "[F]indings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). By contrast, "[a]

trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

## A.

Interpretation of contracts is reviewed de novo. Serico v. Rothberg, 234 N.J. 168, 178 (2018). "A settlement agreement between parties to a lawsuit is a contract." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). The construction and interpretation of a settlement agreement is a matter of law and is subject to de novo review on appeal. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009); see also Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) ("When a trial court's decision turns on its construction of a contract, appellate review of that determination is de novo."). We "give 'no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Ibid. (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

"A reviewing court must consider contractual language 'in the context of the circumstances' at the time of drafting . . . .'" Ibid. (quoting Sachau v. Sachau, 206 N.J. 1, 5-6 (2011)). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Capparelli v. Lopatin,

459 N.J. Super. 584, 604 (App. Div. 2019) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). As with the interpretation of any other contract, a court shall not rewrite a settlement agreement "to provide a better bargain than contained in [the parties]['] writing." Kaur, 405 N.J. Super. at 477 (first alteration in original) (quoting Grow Co., Inc. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008)).

B.

Appellate courts review an award of attorney's fees for abuse of discretion. Noren v. Heartland Payment Sys., Inc., 448 N.J. Super. 486, 497 (App. Div. 2017). Determinations regarding attorney's fees will be disturbed "only on the rarest of occasions, and then only because of a clear abuse of discretion." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

C.

To promote arbitration as a judicially efficient dispute-resolution method, New Jersey law strongly favors enforcing arbitration awards and grants such awards considerable deference. Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013). As such, "arbitration awards are given a wide berth, with limited bases for a court's interference." Ibid.

Under Rule 1:40-2(a)(1), arbitration is "[a] process by which each party []or its counsel presents its case to a neutral third party, who then renders a specific award."  The "arbitrator's role is evaluative, requiring the parties to present their evidence for a final determination."  Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 324 (2019) (quoting Minkowitz v. Israeli, 433 N.J. Super. 111, 144 (App. Div. 2013)).

The New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, represents "a legislative choice 'to keep arbitration agreements on "equal footing" with other contracts.'"  Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (quoting Roach v. BM Motoring, LLC, 228 N.J. 163, 174, (2017)).  Under the statute, "'arbitration is fundamentally a matter of contract,'" and should be regulated according to general contract principles."  Ibid. (quoting Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (App. Div. 2022)).

Arbitrators have broad powers to resolve disputes, and judicial involvement is limited.  Once parties contract for binding arbitration, the court may only enforce orders or subpoenas issued by the arbitrator, confirm the arbitration award, correct or modify an award, or, in limited circumstances, vacate an award.  Minkowitz, 433 N.J. Super. at 134 (citing N.J.S.A. 2A:23B-

11

17(g), -22 to -24).  Arbitrators have "broad discretion over discovery and other procedural matters to 'conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding.'" Id. at 144 (quoting N.J.S.A. 2A:23B-15(a)).

## III.

Plaintiffs contend the trial court committed three discovery-related errors warranting reversal.  First, they claim the trial court failed to conduct the fact-finding we mandated in Haffert IV.  Second, plaintiffs argue the trial court developed an arbitrary definition of "relevant" without citing legal authority. Third, plaintiffs argue that the trial court misinterpreted paragraph 15 of the term sheet by improperly adding the phrase "in their possession."  Plaintiffs maintain paragraph 15 requires board members to "provide all financial and other relevant documents to receiver and/or CPA" without any possession limitation.  We are unpersuaded.

We consider our well-settled jurisprudence.

## A.

"[T]he settlement of litigation ranks high in our public policy," and we "strain to give effect to the terms of a settlement wherever possible."  Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (first quoting Jannarone v. W.T.

Co., 65 N.J. Super. 472, 476 (App. Div. 1961); and then quoting Dep't of Pub. Advoc., Div. of Rate Couns. v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)). "Our strong policy of enforcing settlements is based upon 'the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Ibid. (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div. 1994)).

New Jersey law holds that where multiple contracts or settlement documents together reflect a single transaction, they should be construed as an integrated agreement; no one element stands alone and each must be read in context of the others. Glass v. Glass, 366 N.J. Super. 357, 373 (App. Div. 2004). A contract supersedes an "earlier contract and becomes the only agreement on the part of the parties on the subject matter" if the later contract "cover[s] the same subject matter and [is] made by the same parties, but contain[s] terms inconsistent with the former contract so that the two cannot stand together." Rosenberg v. D. Kaltman & Co., 28 N.J. Super. 459, 463-64 (Ch. Div. 1953); see also 13 Sarah H. Jenkins, et al., Corbin on Contracts § 71.1(5) (rev. ed. 2021) (stating that a court considering a "substituted contract" claim must construe "the two contracts . . . together" and, "[i]nsofar as they are inconsistent, the later

13

one prevails; the remainder of the first contract, if consistent with the second in substance and in purpose, can be enforced.").

Rule 1:7-4(a) "requir[es] the motion judge to make factual findings that are supported by the record and explain legal conclusions in a manner amenable to appellate review." Terranova v. Gen. Elec. Pension Tr., 457 N.J. Super. 404, 409 (App. Div. 2019). "A judge's fact-finding must explain 'how and why the ultimate conclusion was drawn'" because a reviewing court "may 'expect' that a trial court's fact-findings will adequately address the 'disputed issues' among the parties." In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021) (quoting N.J. Div. of Youth & Fam. Servs. v. H.P., 424 N.J. Super. 210, 230 (App. Div. 2011)). "Failure to make explicit findings and clear statements of reasoning constitutes a disservice to the litigants, the attorneys, and the appellate court." Ibid. (quoting Gnall, 222 N.J. at 428) (internal quotation marks omitted).

We gave clear direction in Haffert IV that establishing the scope of "relevant documents" is "an issue of contract interpretation which may require further fact finding." slip op. at 41. The record shows the trial court properly exercised its discretion when it relied on sworn certifications from defendants and the receiver. We note that the permitted discovery yielded four boxes of documents which plaintiffs had the opportunity to review. The entire record

gave the court a sufficient basis for its findings, especially where plaintiffs failed to offer any credible evidence that defendants withheld documents.

On this record, we conclude that the trial court's finding that "relevant documents" meant documents necessary to effectuate the settlement was reasonable, as was the court's election to exclude post-settlement documents from that definition. The trial court's approach aligns with well-settled principles of contract interpretation we have outlined here. Adoption of plaintiffs' interpretation of the term "relevant document" would create an open-ended discovery obligation. Such a concept runs counter to notions of finality central to our system of arbitration. See Borough of E. Rutherford, 213 N.J. at 201.

On the possession question, we note the trial court treated the separate settlement documents as an integrated agreement, importing the appointment order's limitation into the interpretation of the term sheet. The court took a practical approach to ensuring compliance with our remand directives in Haffert IV, accepting defendants' certifications that they turned over for review all documents in their possession. This was a proper exercise of discretion given the certification-based record and lack of any proof submitted by plaintiffs of specific instances of document withholding. The court provided a detailed

15

statement which satisfies <u>Rule</u> 1:7-4(a) requirements and complied with our instructions on remand.  We discern no error.

B.

Plaintiffs next argue the trial court erred by adopting Gould's request for a 12% interest rate instead of the 10% interest rate imposed by the arbitrator. We agree.

After reviewing submissions, the arbitrator determined that a 10% interest rate would apply, despite the bylaws reference to imposition of 12% interest. New Jersey provides very limited authority to disturb confirmed arbitration awards.  Courts can only overturn awards upon a showing of fraud, corruption, misconduct, or other extraordinary circumstances.  <u>See</u> N.J.S.A. 2A:23B-23(a). Neither party has alleged fraud, corruption, or misconduct.  Defendants' only claim is that the arbitrator incorrectly applied the interest provision by awarding 10% instead of 12%.  In our view, the arbitrator's finding is within the scope of their authority, and does not justify disturbing the award.  We conclude the trial court improperly modified a confirmed element of the award from 10% to 12%, and we vacate that portion of the trial court's order which imposes 12% interest. We see no need to disturb the arbitrator's findings on this question, and we

A-3853-23

remand for the trial court to modify its order to impose 10% interest on the arbitration award.

C.

Plaintiffs contend that the trial court's July 30, 2024 order awarding $55,830 in counsel fees to defendants is in error. They argue that our decision in <u>Haffert IV</u>, read together with the settlement agreement, the term sheet, and our well-settled attorneys' fees jurisprudence, does not support an award of counsel fees. Plaintiffs also argue that defendants' fee application is deficient under the law. We are unpersuaded.

Article VI, Section I of the Association's bylaws state that,

> Any assessment made by the Association and charged against any Owner of any Unit, shall be a lien against such Unit, subject to the appropriate provisions of the Condominium Act; such lien shall exist in favor of the Association and there shall be included therein interest and reasonable attorney's fees for enforcing payment or collection thereof.

i.

N.J.S.A. 46:8B-15(e) of the Condominium Act provides that associations may levy and collect assessments, together with interest, late fees, and reasonable attorneys' fees, if authorized by the master deed or bylaws. This statute creates a specific exception to the American Rule for condominium

associations whose governing documents properly authorize fee recovery. The Condominium Act authorizes the collection of "reasonable attorney's fees imposed or incurred in the collection of [an] unpaid assessment." N.J.S.A. 46:8B-21(a).

Where fees are recoverable pursuant to contract, "courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees." Litton, 200 N.J. at 406.

The general rule regarding appellate fees is that "[a]pplications relative to costs and allowances of counsel fees are to be made in the court in which the costs accrued or the services claimed for were rendered." Tooker v. Hartford Accident & Indem. Co., 136 N.J. Super. 572, 578 (App. Div. 1975).

Rule 2:11-4 requires that applications for appellate fees be made within ten days of the appellate decision, and "[i]n the absence of a referral from the appellate court to the trial court, the trial court has no authority to award such fees." Tarr v. Bob Ciasulli's Mack Auto Mall, 390 N.J. Super. 557, 570 (App. Div. 2007). The 2024 amendment to Rule 2:11-4(b) provides that where an appellate disposition results in remand and "the award of counsel fees abides the event, a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand shall request any attorney's fees sought for the appeal

after completion of the remand." Under Rule 2:11-4(b), the request shall be made by motion and "shall be filed no later than 30 days after the completion of the remand proceedings . . . ."

Our review of the trial court's comprehensive statement of reasons shows that it correctly identified clear statutory and contractual authority to support the imposition of counsel fees. The court further found that the settlement agreement "resolved all fees up until the date of the . . . agreement and term sheet" but "did not nullify the bylaws and therefore did not preclude the recovery of attorneys' fees for future efforts to collect assessments."

The court's view of the settlement, viewed through the lens of applicable law, properly distinguishes between the pre-settlement dispute over past assessments and future enforcement action arising from alleged non-compliance with the settlement itself. The settlement contemplated that unit owners would pay amounts determined by the receiver. Plaintiffs' decision to challenge the receiver's findings constituted new litigation concerning enforcement of the receiver's assessment, not a continuation of the original dispute. The court's interpretation of the fee provision of the settlement agreement is reasonable, given the context: settlement of a dispute about past assessments. It is

reasonable for us to conclude that the parties' settlement contemplated final resolution, not endless disputes about degrees of compliance.

ii.

We turn to the fee analysis performed by the trial court.

As a threshold matter, fee-shifting is permissible when expressly authorized by statute, court rule, or contract. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001). "[A] trial court must analyze the Rendine [v. Pantzer, 141 N.J. 292, 324 (1995)] factors in determining an award of reasonable counsel fees and then must state its reasons on the record for awarding a particular fee." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004) (citing R. 1:7-4(a)). We reverse a fee determination if it was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." C.E. v. Elizabeth Pub. Sch. Dist., 472 N.J. Super. 253, 262 (App. Div. 2022) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

To determine whether a fee award is reasonable, the lawsuit must be causally related to securing the relief obtained, the prevailing party's efforts must be necessary, and the prevailing party's efforts must be an important factor in obtaining the relief. Litton Indus., Inc., 200 N.J. at 386.

20

In granting an award of attorneys' fees, "[t]he court's first step . . . determining the lodestar, 'which equals "the number of hours reasonably expended multiplied by a reasonable hourly rate."'" Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc., 458 N.J. Super. 194, 209 (App. Div. 2019) (quoting Furst 182 N.J. at 21). Determination of the lodestar "is the most significant element in the award of a reasonable fee because that function requires the trial court to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application." Rendine, 141 N.J. at 335.

> There are four considerations in setting the lodestar. The first is the reasonableness of the attorney's fee, evaluated under the factors set forth in RPC 1.5(a). Second, the court considers the reasonableness of the time billed by the attorney, since a party is not entitled to counsel fees for excessive and unnecessary hours. Third, the court determines whether the award should be decreased because the plaintiff "achieved limited success in relation to the relief he [or she] had sought." Fourth, the court must decide whether the attorney is entitled to a fee enhancement if the attorney worked under a contingency agreement.
>
> [Heyert v. Taddese, 431 N.J. Super. 388, 443-44 (App. Div. 2013) (footnote omitted) (citations omitted) (quoting Furst, 182 N.J. at 23).]

Our review of the trial court's detailed statement of reasons leads us to conclude that it properly applied these principles to the record, excluding fees

associated with appellate work, conducting a thorough reasonableness analysis, assessing proportionality, and carefully reviewing billing entries. Again, we discern no error.

Finally, the court adequately supported its exclusion of $45,780 in appellate counsel fees from defendants' application. If appropriate, defendants may apply by motion to the Appellate Division for counsel fees regarding work done related to appellate proceedings consistent with the Rules of Court.

Affirmed as to the February 6 and July 30, 2024 orders. We vacate the July 26, 2024 order and remand for implementation of the correct interest rate. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

22