287 N.J. Super. 551 (1996)
671 A.2d 623
JOSEF BILLIG AND ORA BILLIG, PLAINTIFFS-APPELLANTS,
v.
BUCKINGHAM TOWERS CONDOMINIUM ASSOCIATION I, INC., PAUL RANCE, BUILDING MANAGER, AND BUCKINGHAM TOWERS ASSOCIATES, A NEW JERSEY PARTNERSHIP, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1995.
Decided February 29, 1996.
*554 Before Judges PRESSLER, KEEFE and RODRIGUEZ.
Frederick L. Bernstein argued the cause for appellants.
Marc Joseph argued the cause for respondents Buckingham Towers Condominium Associates I, Inc. and Paul Rance (Joseph & Feldman, attorneys; Mr. Joseph, of counsel; Anthony D. Seymour and Edward Paul Alper, on the brief).
Denise J. Waltuch argued the cause for respondent Buckingham Towers Associates (Schepisi & McLaughlin, attorneys; David L. Koman, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
*555 This litigation arises out of mutual misunderstandings between the owners of a condominium unit and the condominium association regarding the extent of the owners' control over their unit and its appurtenances and, conversely, the extent of the association's control over the activities of the unit owners and the manner in which that control must be exercised. More specifically, this dispute involves the common elements and limited common elements of the structure, raising the question of whether the condominium association is subject to the rule of reasonableness in considering owners' requests to make changes within their units that affect, but not materially, substantially, or significantly, the common elements or limited common elements. We hold that the association is so subject and that, as a matter of fact, the association here acted unreasonably in withholding permission from the unit owners to proceed with their heating and air conditioning upgrade. We consequently reverse the contrary judgment of the Law Division.
In January 1988, plaintiffs Josef and Ora Billig closed title on Unit 22A, a condominium unit on the twenty-second floor of a new luxury high-rise condominium in Fort Lee known as Buckingham Towers. The purchase price was $900,000. They took their unit deed from the sponsor, defendant Buckingham Towers Associates, subject to the master deed, the offering plan, by-laws, rules and regulations, and the statute governing condominium ownership and management, N.J.S.A. 46:8B-1, et seq. Plaintiffs assumed occupancy in February 1988.
Like many of the other unit owners, plaintiffs had planned a number of internal renovations involving room partitions, electrical modifications, and floor coverings. They contracted for the work, and it was undertaken. They were also dissatisfied, from the outset of their occupancy, with the heating and air conditioning (HVAC) system in their apartment. It was, in their view, too noisy and inefficient. After retaining appropriate experts and contractors, they changed the system, disconnecting the existing *556 equipment and installing their own. The installation involved placing a small compressor on each of their two balconies. The compressor stands below the balcony railing and is not visible from the exterior of the building. The installation also required, for each compressor, the drilling of two one-inch holes in the bottom of the hollow aluminum window frames in order to pass electrical wires and a freon tube to the compressors from the interior of the apartment. The holes were thereafter caulked. Duct work was also laid in the apartment's dropped ceiling. The expert testimony established beyond any factual dispute that the installation had no effect whatsoever on the structural integrity of the building, the windows, the window frames, or the balcony, or on the visible appearance of the balcony. It was also established that the electrical source within the unit, metered to the Billigs, was adequate to bear the electrical load of the new system and had no effect at all on the common electrical system. In addition, because the original heating and air conditioning system was of a parallel open loop design, the disconnection in plaintiffs' unit had no effect whatsoever on the functioning of the system in any of the other units or in the building as a whole. Finally, the compressors on the balcony apparently run sufficiently quietly as to constitute neither a nuisance, a bother, nor an annoyance to any other unit owners.
Plaintiffs' problems with defendant Buckingham Towers Condominium Association, the association to which the sponsor had turned over the building in June 1988, and with the association's building manager, defendant Paul Rance, began in September 1988. Insofar as we are able to determine from the voluminous record, the sponsor's vice president of construction, Fred DeFilippo, wrote to the president of the association, Ronald Stoppelman, on September 20, 1988, advising him that the work being done in plaintiffs' unit on the HVAC system had not been included in their filed plans. That was true. DeFilippo expressed his opinion that the HVAC work "may cause a serious impact to the building systems." He further opined that

*557 The effect these modifications will have on the common elements of the building cannot be determined at present. It is our opinion that they may cause the guarantees and warranties of the building systems affected to be voided. More importantly, these modifications may cause interruption of these systems and annoyance to other neighboring units.
Consequently, DeFilippo recommended "that all work in unit 22A be stopped immediately and a thorough review of the work done to date be reviewed to determine the impact of these modifications."
A day or two later, Stoppelman and another member of the association's board of directors met with plaintiffs in their unit to inspect the work, which was then nearing completion, and to discuss the situation. Although Stoppelman and Mr. Billig testified divergently regarding the tone and nuances of their meeting, they did concur that Billig agreed to write to the board and requested its permission to proceed, Stoppelman having told Billig that the work required association approval because it constituted an alteration to common and limited common elements. Billig wrote such a letter to the board on September 23, 1988, departed the following day for an extended trip abroad, and did not return until the end of October. During his absence, Rance stopped the work by refusing entry to plaintiffs' contractors.
While plaintiffs were away, the board's executive committee considered the matter, noting DeFilippo's concern about the HVAC warranties and further noting that "[i]t was advised that an injunction must be served upon [plaintiffs] in 22A in order to correct this." The source of that advice is not noted. The minutes of the board's ensuing October 13, 1988, meeting include Rance's manager's report, which contains this notation:
The unit owner of 22A has severely altered some of the major mechanical and plumbing elements of the building without obtaining permission from the Board of Directors. The original plans submitted to the Board of Directors was for some very minor changes to non structural walls. Due to the magnitude of the changes, the Board of Directors will be instituting and [sic] injunction to stop the work in progress and an order for this unit owner to restore the unit to its original system. Attorney for Condominium Association will be instituting suit with sponsor's attorney as co-counsel.
*558 The minutes do not indicate that this item of the manager's report was discussed or directly acted upon. Moreover, it is ambiguous as to whether the reference to both the board and the board's attorney instituting suit was intended by the manager to be informative to the board or reflective of a decision reached by the board. Since there is no indication in the minutes that the board itself considered or voted upon the matter, it appears likely that the manager was simply advising the board of a fait accompli, which the board accepted. In any event, before the association filed suit, plaintiffs commenced this action in November 1988 by order to show cause seeking a variety of relief, including the right to complete the HVAC work. They also sought damages against the association and the sponsor. The association counterclaimed, seeking an injunction against the work, an order requiring plaintiffs to restore the unit's HVAC to its original condition, damages, and an award of counsel fees as provided for in the association by-laws. The court at that time permitted the completion of the work and the new HVAC system has been in operation since.
Trial commenced in March 1992 and lasted 17 days  much of that time being consumed by attorney colloquy rather than the taking of testimony. By the time trial started, partial summary judgment had been entered dismissing plaintiffs' complaint against the sponsor. Also by the time trial started, the hostility between plaintiffs and the association  or at least between plaintiffs and the association's president and building manager  had escalated. Thus, for example, plaintiffs had fallen into arrears on their monthly payments while away on an overseas trip. On August 25, 1989, a lien claim for a month's delinquency was filed against them by the association in the amount of $4,417.42, a sum that included interest and attorney's fees. Upon their return, plaintiffs sent the association a check in the amount of $5,107.68. The association refused to cancel the lien, advising plaintiffs on September 13, 1989, that they owed an additional $661.66 for late charges, legal fees, filing fees, and interest. Correspondence ensued between plaintiffs' and the association's counsel, but before the matter could be settled, the association filed a foreclosure action against *559 plaintiffs based on the full amount of the filed lien claim. That action was subsequently dismissed. The action does not appear to have been expressly authorized by a vote or other action of the association's board, but rather appears to have been ordered by the building manager under an apparent assumption of authority. It also appears that during the period of construction in plaintiffs' unit, there was a virtually continuous wrangling over building permits. This involved disputes over the need for permits for various of the undertakings and the scope of the permits issued. Suffice it to say that eventually, and after work stoppages of one sort or the other initiated both by the association's management and the municipal building department, all required permits were ultimately issued. However, work requiring permits had commenced to an appreciable degree prior to their issuance.
At trial, the central issue was whether plaintiffs had the right, as unit owners, to make the HVAC modifications. The court, in its letter opinion, concluded that since common elements and limited common elements were involved in the modifications, plaintiffs' action violated the master deed, the by-laws, the rules and regulations, and the offering plan. Based on that finding of violation, the court held that the association was entitled to judgment ordering plaintiffs to restore the HVAC system to its original condition. Rejecting plaintiffs' assertions that the legal actions taken in the name of the association had not been properly authorized and that the board had tacitly approved of the modifications, the court dismissed plaintiffs' complaint. By order denominated "final judgment/order" entered on March 5, 1993, and certified as final pursuant to R. 4:42-2, the court fixed a schedule for plaintiffs' compliance with the restoration directive and reserved on the issue of the association's right to compensatory damages and attorney's fees. Plaintiffs promptly appealed, and further trial proceedings have been stayed.
In considering the central issue raised by this appeal, we view the matter somewhat differently from the trial judge. As we see it, the question of whether plaintiffs violated their obligations as *560 unit owners by not obtaining permission from the board before undertaking the HVAC work is not the end of the inquiry but rather the beginning. The more fundamental questions are whether it was within the board's power to have granted that permission and whether the board's refusal to do so when plaintiffs requested it was reasonable. We think it plain that if the board had the power to grant permission and if it acted unreasonably in withholding it, plaintiffs are entitled to retain their HVAC modification irrespective of whatever remedy, if any, the board might be entitled to for plaintiffs having proceeded without permission. We conclude, moreover, that in view of the operative statutes and condominium documents, the board's refusal to grant permission was unreasonable.
To begin with, the condominium association is subject to the Condominium Act, N.J.S.A. 46:8B-1 to -38. The Act defines a condominium unit as "a part of the condominium property designed or intended for any type of independent use," having access to a public street or to a common element leading to a public street, and including a proportionate undivided interest in the common elements and limited common elements. N.J.S.A. 46:8B-3o. A unit, moreover, constitutes "a separate parcel of real property which may be dealt with by the owner thereof in the same manner as is otherwise permitted by law for any other parcel of real property." N.J.S.A. 46:8B-4. "Common element" is defined as the land so described in the master deed and those structures, areas, installations, and facilities that, by their nature, serve all the unit owners. N.J.S.A. 46:8B-3d. "Limited common element" is defined as a common element limited to the exclusive use of one or more specified units. N.J.S.A. 46:8B-3k. Each unit owner has the right to use the common elements "in accordance with the reasonable purposes for which they are intended without encroaching upon the lawful rights of the other unit owners." N.J.S.A. 46:8B-6. Finally, N.J.S.A. 46:8B-18 provides in full that
There shall be no material alteration of or substantial addition to the common elements except as authorized by the master deed. No unit owner shall contract for or perform any maintenance, repair, replacement, removal, alteration or *561 modification of the common elements or additions thereto, except through the association and its officers. No unit owner shall take or cause to be taken any action within his unit which would jeopardize the soundness or safety of any part of the condominium property or impair any easement or right appurtenant thereto or effect the common elements without the unanimous consent of all unit owners who might be affected thereby.
The Buckingham master deed also refers to modification of both common elements and limited common elements. It provides that
No Unit Owner other than the sponsor may make any structural additions, alterations or improvements in his unit or of the Common Elements or Limited Common Elements without the prior written approval of the Association.
The By-Laws similarly provide, adding as well the proviso that
No apartment unit owner shall install any appliance (except a washing machine and/or dryer) or make any addition, alteration, or improvement which is structural or pertains to the mechanical or electrical systems of the unit or building in or to his apartment unit without the prior written consent thereto of the Board of Directors....
The Rules and Regulations provide that
No ventilator, air conditioning unit, washing machine or other appliance or equipment which in any way alters the mechanical or electrical systems of the apartment or the building shall be installed in any apartment unit without the prior written approval of the Board of Directors or the Managing Agent or the manager as to the type, location, and manner of installation of such appliance, which approval may be granted or refused in the sole discretion of the Board of Directors or the Managing Agent or the manager.
Finally, the Offering Plan prohibits "any addition, alteration, improvement or change in or to any Common Element without the prior written consent of the Board of Directors." The Offering Plan also classifies the balconies and terraces appurtenant to a unit as a limited common element reserved for the exclusive use of the unit owner. Insofar as the record indicates, the only restrictions on the unit owner's balcony use are the prohibitions of barbecue equipment, enclosures, and free choice of flooring material.
The trial judge found that plaintiffs had violated their obligations as set forth in all these documents by proceeding, without permission, to make their HVAC changes. He did not, however, make any finding as to whether these "violations" constituted substantial or material alterations of common or limited *562 common elements; in any way affected the mechanical, electrical, and HVAC systems of the building as a whole; or in any way encroached upon the rights, use, occupancy, comfort or convenience of any other unit owner. We are persuaded from our review of the record, however, that plaintiffs conclusively established that as radical as their modifications may have appeared at first blush, they did not, in fact, have any effect at all on the overall systems, they in no way breached any obligations plaintiffs had in respect of the balcony as a limited common element, and that the drilling of the two one-inch holes through the hollow portion of each of two window frames was a wholly insubstantial and de minimis impingement on that structural common element. We reach this first conclusion based on the evidence that the removal of the original heat pumps had as little effect on the overall system as the unit owners' exercise of the option to simply turn them off. Moreover, the electrical source within the unit, provided for the use of the unit owner, was adequate to accommodate the new system. The placing of the two compressors on the balconies was entirely unobtrusive, and there was no evidence that it created any kind of visual or auditory annoyance to anyone. The drilling of the two holes, suggested by the association as potentially weakening the structure of the windows and thus the structure of the entire exterior of the building, was demonstrated to be entirely inconsequential in mechanical or visual terms.
In view of DeFilippo's letter to the board, we can well understand its legitimate concern that plaintiffs might be impairing common elements. We point out, however, that DeFilippo had recommended "thorough review" of plaintiffs' plans. There is nothing in the record to indicate that the board either invited plaintiffs to make a presentation supported by their experts so as to demonstrate the benignity of their proposal or in any other way sought to inform itself as to the nature and consequences of the work. The board simply stopped it and immediately assumed an adversarial posture.
*563 We are convinced that had the board been fully apprised of the nature and consequences of plaintiffs' plans, it would have been unreasonable for it to have denied permission. The statute and the condominium documents make clear that modifications of common elements and limited common elements having no substantial impact on the condominium property as a whole or on the rights and expectations of all other unit owners are not subject to association prohibition. The association's right, granted both by statute and the documents, to grant or withhold permission is obviously intended to be exercised for the protection of the whole and for each of the constituent owners. As we view the import of the condominium scheme and the vouchsafing to each owner of individual real property rights, permission may not be refused except if denial of permission serves to protect the other affected interests. Conversely, if a unit owner's plans for work in his own unit do not in any appreciable way adversely affect those other interests, it is not reasonable for permission to do the work to be denied. That is to say, the test of reasonableness is whether the interests of the unit owners as a whole are served, advanced, or protected by the board's action.
We reach this conclusion for the reasons articulated in Thanasoulis v. Winston Towers 200 Ass'n., Inc., 110 N.J. 650, 657, 542 A.2d 900 (1988). As the Court there explained, a condominium association stands in a fiduciary relationship to the unit owners. That relationship requires that it act consistently with the Condominium Act and its own governing documents and that its actions be free of fraud, self-dealing, or unconscionability. Siller v. Hartz Mountain Assoc., 93 N.J. 370, 382-383, 461 A.2d 568 (1983). Moreover, that fiduciary relationship requires that in dealing with unit owners, the association must act reasonably and in good faith. See this court's opinion in Thanasoulis v. Winston Tower 200 Ass'n., Inc., 214 N.J. Super. 408, 411, 519 A.2d 911 (App.Div. 1985), rev'd on other grounds, 110 N.J. 650, 542 A.2d 900 (1988). If a contested act of the association meets each of these tests the judiciary will not interfere. See also Papalexiou v. *564 Tower West Condominium, 167 N.J. Super. 516, 527, 401 A.2d 280 (Ch.Div. 1979). The refusal here of permission to plaintiffs to make their HVAC change was not reasonable because the change did not materially or appreciably affect the condominium property, the common elements, the limited common elements, the collective interests of the unit owners, or the interests of any individual unit owner. Plaintiffs are therefore entitled to retain that modification, and we reverse that portion of the judgment appealed from requiring them to restore their unit to its original HVAC condition.
There are several other matters we are constrained to address. First is the issue plaintiffs raise respecting the management of the association and, more particularly, the necessity for a formal resolution authorizing litigation. Irrespective of the precise form that authorization takes, we think it evident that the decision to engage in litigation, whether foreclosure or the assertion of affirmative claims against a unit owner or a third party, must be a collective decision of the board. Litigation ought to be a last resort, not a first one. It is expensive, it is burdensome, and when it involves a claim against a unit owner, it may well be counter-productive to the harmony and commonality required for successful community living. Clearly, before the unit owners can be burdened with the financial onus and other burdens of litigation, they must be assured that their elected board has made reasonable efforts otherwise to resolve the dispute, that the members of the board, with as full a briefing as possible, have made a collective decision, and that the decision is properly memorialized. Nothing less is required of both public and private corporations. Woodhull v. Manahan, 85 N.J. Super. 157, 164-165, 204 A.2d 212 (App.Div.), aff'd, 43 N.J. 445, 205 A.2d 441 (1964); Woodsum v. Pemberton Twp., 172 N.J. Super. 489, 520, 412 A.2d 1064 (Law Div. 1980), aff'd, 177 N.J. Super. 639, 427 A.2d 615 (App.Div. 1981); C.B. Snyder Realty Co. v. Nat. Newark, etc. Banking Co., 14 N.J. 146, 154, 101 A.2d 544 (1953); N.J.S.A. 14A:6-15(4); Pachman, Title 14A  Corporations, Comment to N.J.S. 14A:6-15 (1994) *565 ("Officers are corporate agents; the corporation acts through them. Their actual authority is derived either from a by-law provision or a resolution of the board of directors.")
The record here is not clear as to what the board understood and whether its decision was actually a collective one. We are, however, troubled by what appears to be the association's lien foreclosure procedure. It does not appear to have a uniform policy as to when a foreclosure action is instituted in terms of duration of default, amount of default, and pre-suit efforts to effect a cure of the delinquency. At least as of the time the foreclosure action was commenced against the Billigs, the decision appears to have been made by the building manager. Certainly that is inappropriate. It is the board that must decide whether and when to take that costly step. Nothing in the record suggests that the board had agreed or was even aware that a foreclosure action was to be brought against the Billigs to collect a disputed $616 delinquency that was obviously capable of out-of-court resolution. In sum, although we cannot say from the record whether the board had in fact authorized the litigation here, we can insist, as a guide for future action, that the institution of litigation by a condominium association requires either collective board authorization or that it be conducted pursuant to a detailed, predetermined, uniformly applied protocol.
We next deal with the issue of whether our determination respecting plaintiffs' right to retain the HVAC modification revives their claim for damages, which was dismissed. We consider that question in the light of the association's pending claims for damages and counsel fees. From what we have already said, we think it plain that as an equitable matter, both sides were right and both were wrong. On the one hand, plaintiffs should not have proceeded with the work without submitting proper plans, obtaining necessary building permits before starting the work, seeking approval, and availing themselves of a reasonable opportunity to demonstrate to the board the unobjectionability of their proposal in terms both of the condominium documents and the demands of *566 communal living. On the other hand, the board acted precipitously and unreasonably in not informing itself of what really was being done in plaintiffs' unit, in having made unfounded assumptions about the character and consequences of the work, and in then taking so unyielding and adamant a position. Each in the end is equally responsible for any ensuing damage that might have been sustained by both. While in these circumstances we cannot imagine that pursuit of their respective compensatory damage claims will serve the interests of either party to this litigation or those of the unit owners collectively or individually, we recognize that the association's claims are not before us. Should the association nevertheless decide to pursue those claims, on proper authorization by the board, the plaintiffs may pursue theirs as well in a single proceeding. Should the association determine not to proceed, then plaintiffs shall be foreclosed as well.
Plaintiffs also appeal from the partial summary judgment entered prior to trial dismissing their claims against the sponsor. We affirm that order for the reasons stated by the trial judge.
Finally, plaintiffs argue that their September 1988 request for permission had been tacitly approved because the board did not respond in writing within thirty days. We reject this argument as well. Plaintiffs, to the knowledge of the board, were out of the country at that time. Beyond that, the board must be regarded at least as having ratified what was an obvious denial of permission by the executive committee.
The judgment appealed from is reversed and we remand for further proceedings consistent with this opinion.