33 A.3d 1235

BELL TOWER CONDOMINIUM ASSOCIATION, PLAINTIFF–RE-SPONDENT, v. PAT HAFFERT, A/K/A GEORGE HAFFERT, AND TERRY DOWNEY, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued December 20, 2011—Decided January 12, 2012.

Before Judges CARCHMAN,[1] FISHER and BAXTER.

*Kevin J. Kotch* argued the cause for appellants (*Obermayer Rebmann Maxwell & Hippel, L.L.P.,* attorneys; *Mr. Kotch,* on the briefs).

*Steven D. Scherzer* argued the cause for respondent (*Cooper Levenson April Niedelman & Wagenheim, P.A.,* attorneys; *Mr. Scherzer,* on the brief).

The opinion of the court was delivered by

BAXTER, J.A.D.

Defendants Pat Haffert and Terry Downey appeal from a January 21, 2011 Law Division order that granted the summary judgment motion of plaintiff Bell Tower Condominium Association (Association), thereby entering judgment against defendants in the sum of $22,400. The judgment in the Association's favor resulted from defendants' refusal to pay their portion of a special assessment imposed by the Association's Board of Trustees (Board) for various repairs and improvements to the condominium premises. Defendants' refusal to pay stemmed from objections to the Association's decision-making process concerning the special assessment.

---

[1] The parties have agreed to Judge Carchman's participation in this appeal, based upon his review of the briefs, without his participation in oral argument.

A portion of the Condominium Act (Act), *N.J.S.A.* 46:8B–1 to – 38, requires condominium associations to establish a "fair and efficient procedure for the resolution of housing-related disputes" between individual unit owners and the association, or between unit owners, "as an alternative to litigation." *See N.J.S.A.* 46:8B–14(k). Nonetheless, the Act does not define the term "housing-related disputes" contained in *N.J.S.A.* 46:8B–14(k). Because the long-established public policy of this State favors alternative dispute resolution, and because the Legislature chose expansive and unconditional language when it required the arbitration of "housing-related disputes" when requested by a party, we construe the term broadly. We hold that the term "housing-related disputes" refers to any dispute arising directly from the condominium relationship. As such, the dispute between the Association and defendants was a housing-related dispute that should have been submitted to arbitration or other form of alternative dispute resolution pursuant to *N.J.S.A.* 46:8B–14(k). We reverse and remand.

I.

Bell Tower Condominium's Master Deed of May 13, 1982 established a five-unit condominium in Sea Isle. Defendants, who are husband and wife, have owned unit 5, the largest unit, since 1982. They are the only year-round residents. In compliance with the bylaws of the Association and applicable statutes, during the period from 1982 to 1997, the Board conducted annual meetings. No meetings were held thereafter until September 2008. No annual meeting was held in either 2009 or 2010.

Defendants assert that at an unspecified time they asked the Board's treasurer to permit them to review the Association's financial records, as well as the documents concerning an insurance claim filed by the Association. According to defendants, the treasurer denied them access to those documents. In October 2006, defendants told the treasurer that the outdoor decks on their unit were unsafe and needed to be replaced, but the treasurer told

them the Association had no funds available to undertake such repairs. Defendants apparently notified the Association of other repairs that were needed, including repairs to the back stairs of their unit and to their storage shed. Defendants explained that many years ago, the water pipes from an adjacent unit broke, flooding defendants' outdoor shed, rendering it unusable. As a result, ever since 2004, defendants have been forced to rent storage space at a commercial storage unit, at a cost of $91 per month.

At the May 30, 2010 meeting of the Board, four of the five elected Board members were present; however, defendant Haffert, who was the fifth Board member, was notified of the meeting, but chose not to attend. At the meeting, the Board approved an $80,000 special assessment for repairs. Units 1, 2, 3 and 4 were each assessed $14,400, and defendants were assessed $22,400 because their unit is substantially larger than the other four. It is this special assessment, and the judge's refusal to send the matter to arbitration, that is the subject of the present appeal.

At the conclusion of the May 30, 2010 meeting, the Board members agreed that at the Board's scheduled meeting on July 4, 2010, the Board would select a contractor from among the three who had submitted bids for the replacement of the outdoor decks. The Board also agreed to review a number of other maintenance issues, including pole lighting, reconfiguration of the electrical service at the rear of the building, hallway carpeting and painting, repairs to the outside stairway and storage lockers and installation of doors on the outside showers.

Upon being notified of their obligation to pay the special assessment of $22,400 by June 15, 2010, defendants notified the Board of their intention to withhold payment of the special assessment, due to their disagreement with the manner in which the assessment decision had been made and their concerns about how the money would be allocated. As a result, the Board retained counsel, who notified defendants that if they did not tender the

$22,400 special assessment by June 15, 2010, the Association would institute suit against them and file a lien against their unit.

Defendants' June 22, 2010 response to that letter renewed defendants' procedural and substantive objections to the special assessment. They asserted that the special assessment was enacted during the May 30, 2010 meeting, even though defendants had advised the Board that it would be inconvenient for defendant Haffert, who was a Board member, to attend; the fire stairway at the rear of the building, which serves as a second means of egress from defendants' unit in the event of a fire, was found in substantial need of repair by an engineer hired by the Association to evaluate the building, yet a repair to that part of the building was deleted from the bid specifications for the $80,000 special assessment; the Board wrongly refused to pay for repairs to defendants' storage shed, forcing them to pay $91 per month to rent an off-site garage; the required annual audit of the Association funds had not been conducted for years; and Association funds were used to repair a leaking toilet in one of the units, even though such a repair should have been the sole responsibility of the unit owner.

Further correspondence between counsel for the Association and defendants failed to resolve the parties' dispute about the special assessment. The Board filed suit against defendants on July 22, 2010, demanding judgment in favor of the Association in the amount of $22,400 for the unpaid special assessment, as well as attorneys fees and costs.

Defendants filed a counterclaim asserting that the Association had failed to adhere to the requirements of the Master Deed, bylaws and applicable statutes concerning the governance of the Association, particularly with respect to financial management and accountability. In their prayer for relief, defendants sought an order: requiring arbitration or mediation of the dispute concerning the $22,400 special assessment; striking the lis pendens that had been filed; requiring the Association to refund to defendants any sums "illegally or improperly spent by the Association for legal fees in connection with [the present] action"; compelling the

Association to refund to defendants and other unit owners any surplus insurance proceeds received by the Association; and requiring the Association to reimburse defendants for the cost of defendants' storage shed.

At the conclusion of discovery, the Association moved for summary judgment on its complaint, and defendants cross-moved for judgment on their counterclaim. When granting summary judgment in favor of the Association, the judge found there was no genuine dispute about the validity of the $80,000 special assessment or defendants' obligation to pay their portion of it. In the course of his ruling, the judge specifically rejected defendants' assertion that the matter should be sent to arbitration, rather than be resolved by litigation. The judge rejected defendants' reliance on a section of the Planned Real Estate Development Full Disclosure Act (PREDFDA) requiring condominium associations to establish an arbitration mechanism to resolve disputes between a condominium board and unit owners, namely, *N.J.S.A.* 45:22A–44. The judge reasoned that the implementing regulations make the requirements of PREDFDA inapplicable to condominiums having less than ten units, and the Bell Tower Condominiums consisted of only five units.

The Association noted that the "[C]ondominium [L]aw does require A[lternative] D[ispute] R[esolution] in ... nonhousing [sic] related disputes" such as "neighbors yelling at each other" or "if you have a problem with the balcony[.]" The Association asserted that the present dispute, which involves unit owners refusing to pay a special assessment, was reserved for the Superior Court and did not come within the arbitration requirements of the Act.

In his oral decision denying defendants' request that the matter be sent to arbitration, the judge focused on only the requirements of PREDFDA, and did not address the arbitration requirement of the Act, set forth in *N.J.S.A.* 46:8B–14(k). The judge reasoned:

Defendant asserts that alternate dispute resolution is required by *N.J.S.A.* 45:22A–44[, PREDFDA]. It's been referred to by the defendant as the condominium law. It's [PREDFDA], it's not the condominium law, it's the Planned Real Estate Development Full Disclosure Act. And that doesn't apply in this situation.

. . . .

The affidavits before the court that deal with what took place are clear on their face. The court doesn't think that any discovery with respect to those issues . . . needs to take place[.] [However,] [t]he issues that are raised in the counterclaim the court believes . . . are worthy of discovery. And so the summary judgment in the main action is granted. And a judgment on that will be entered in favor of the Bell Tower Condominium Association against defendants[.] . . . [I]f counsel [for the Association] wishes, [a] certification of fees and costs in association with the action [may be submitted].

On appeal, defendants raise a single claim, namely, the Law Division erred by refusing to dismiss this matter in favor of arbitration, as required by *N.J.S.A.* 46:8B–14(k). For its part, the Association argues that while *N.J.S.A.* 46:8B–14(k) requires that all "housing-related disputes" be sent to arbitration, a refusal to pay a special assessment imposed by a condominium board is not a "housing-related dispute" for which arbitration is required.

## II.

When reviewing an order granting or denying summary judgment, we owe no deference to the trial judge's conclusions of law. Our review is de novo. *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

We address the question of whether the judge erred when he refused to send to arbitration the Association's claim for judgment on the $22,400 special assessment. Defendants agree that their initial reliance on PREDFDA was misplaced,[2] as one of the implementing regulations specifies that a developer is not required to register with the Department of Community Affairs, or comply with the provisions of PREDFDA, when the condominium offering consists of fewer than ten units. *See N.J.A.C.* 5:26–2.2(a)(10).

We reach a different result concerning the Act. Before addressing the specific provisions of that legislation, we pause to consider the strong public policy of this State favoring arbitration·

[2] The attorney representing defendants on appeal is not the same attorney who represented them before the Law Division.

as a mechanism for resolving disputes. As Judge Pressler observed in *Billig v. Buckingham Towers Condominium Association I, Inc.*, 287 *N.J.Super.* 551, 564, 671 *A.*2d 623 (App.Div.1996):

> Litigation ought to be a last resort, not a first one. It is expensive, it is burdensome, and when it involves a claim against a unit owner, it may well be counter-productive to the harmony and commonality required for successful community living.

We adhered to the strong public policy favoring alternative dispute resolution more than a decade later, when we observed in *Angrisani v. Financial Technology Ventures, L.P.*, 402 *N.J.Super.* 138, 148, 952 *A.*2d 1140 (App.Div.2008), that "arbitration is ... favored ... as a means of resolving disputes[.]" (internal citation and quotation marks omitted).

The Act, which provides for the regulation of condominiums in New Jersey, makes it clear that "condominium ownership is distinct from other forms of property ownership because, when an individual purchases a condominium unit, he or she simultaneously acquires a proportionate undivided interest in the community's common elements." *Fox v. Kings Grant Maintenance Ass'n*, 167 *N.J.* 208, 218, 770 *A.*2d 707 (2001) (citing *N.J.S.A.* 46:8B–6). The Act provides for the creation of an association, which has responsibility for the administration and management of the condominium and its property, "including but not limited to the conduct of all activities of common interest to the unit owners." *N.J.S.A.* 46:8B–12.

The association is charged with the duty to maintain the common elements and to assess and collect funds for common expenses. *N.J.S.A.* 46:8B–13. The association is administered by a governing board and, when at least seventy-five percent of the units have been sold, only the unit owners may elect members to the association's board. *N.J.S.A.* 46:8B–12.1(a).

Under the Act, the association " 'is a representative body that acts on behalf of the unit owners.' " *Fox, supra*, 167 *N.J.* at 220, 770 *A.*2d 707 (quoting *Thanasoulis v. Winston Towers 200 Ass'n*, 110 *N.J.* 650, 656, 542 *A.*2d 900 (1988)). Through the

condominium association, the unit owners exercise their "ultimate responsibility" for the management of a condominium's common elements. *Ibid.* The association must "act on behalf of its unit owners" and it has "primary responsibility" to protect the unit owners' interests in the common elements. *Id.* at 220–21, 770 A.2d 707.

Defendants assert that by enacting *N.J.S.A.* 46:8B–14(k), the Legislature also recognized the strong public policy in favor of arbitration. The relevant portion of the Act provides:

An association shall provide a fair and efficient procedure for the resolution of housing-related disputes between individual unit owners and the association, and between unit owners, which shall be readily available as an alternative to litigation. [*N.J.S.A.* 46:8B–14(k).]

Construing that statute, we held in *Finderne Heights Condominium Association, Inc. v. Rabinowitz,* 390 *N.J.Super.* 154, 163, 915 A.2d 16 (App.Div.2007), that because a condominium association is required to provide a procedure for the resolution of "housing-related disputes" as an "alternative to litigation," *N.J.S.A.* 46:8B–14(k), qualifying disputes must be sent to arbitration if, after suit is filed, either party chooses to invoke the alternative dispute remedy that must be made available under the Act.

Consequently, the resolution of the present appeal turns on whether the dispute between the parties is a "housing-related dispute[ ]" within the meaning of *N.J.S.A.* 46:8B–14(k), for if it is, the Association concedes that arbitration or some other method of alternative dispute resolution would be required as an alternative to litigation. Although the Act contains an extensive definitional section, *N.J.S.A.* 46:8B–3, the term "housing-related dispute" is not defined.

In light of the strong public policy of this State favoring arbitration, and the Legislature's failure to impose any limitations or conditions upon an association's or a unit owner's right to pursue arbitration to resolve "housing-related disputes," we conclude that the present dispute over the special assessment is a "housing-related dispute" that entitles defendants to demand arbitration under *N.J.S.A.* 46:8B–14(k).

The term "housing-related disputes" is a broad one. In light of the autonomy that unit owners surrender by choosing to live in a condominium, we cannot agree with the Association that its management of the condominium's common elements, and its imposition of special assessments, should be carved out as an exception to the broad right of unit owners to demand arbitration to resolve "housing-related disputes." The term is not ambiguous. The term "housing-related disputes" signifies that only disputes that arise from the parties' condominium relationship are subject to the arbitration provisions of *N.J.S.A.* 46:8B–14(k). Any other dispute would be resolved either in the Law Division or in the municipal courts. Examples of disputes that are not "housing-related disputes" within the meaning of *N.J.S.A.* 46:8B–14(k) might include, without limitation, an auto accident in the condominium parking lot, a commercial dispute arising from a failed business venture between two unit owners, a palimony claim asserted by one unit owner against another, a legal or medical malpractice claim against another unit owner, a crime or disorderly persons offense committed by one owner against another, or any other dispute that does not arise directly from the parties' condominium relationship.

The present dispute is a "housing-related dispute" within the meaning of the applicable statute. Underlying defendants' refusal to pay the special assessment is their contention that the Board breached the fiduciary obligations imposed upon it by *N.J.S.A.* 46:8B–14(j). *N.J.S.A.* 46:8B–14(j) requires a condominium association to "exercise its powers and discharge its functions in a manner that protects and furthers or is not inconsistent with the health, safety and general welfare of the residents of the community." The present dispute is clearly "housing-related," as it is premised on one of the sections of the Act.

In sum, the strong public policy of this State favoring arbitration, the broad and unconditional language chosen by the Legislature when it used the term "housing-related disputes," and the present dispute's origins in the disagreement over the scope of the

special assessment, all compel the conclusion that under the statute, arbitration or other form of alternative dispute resolution is required.

Reversed and remanded for the entry of an order requiring alternative dispute resolution or arbitration of plaintiff's complaint.[3]

[3] The present appeal addresses only the grant of summary judgment on plaintiff's complaint, and the judge's refusal to send that complaint to arbitration. Defendants' counterclaim remains pending in the Law Division. The pendency of the counterclaim would ordinarily render this appeal interlocutory, but in light of the Court's opinion in *GMAC v. Pittella,* 205 *N.J.* 572, 585–86, 17 A.3d 177 (2011), which construed *Rule* 2:2–3(a), we hold that the order denying arbitration was final for purposes of appellate review, even though the Law Division retained jurisdiction over the counterclaim. We express no opinion on whether the counterclaim, too, should be referred to arbitration.