**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2792-20

MATTHEW MACFARLANE,

    Plaintiff-Appellant,

v.

SOCIETY HILL AT
UNIVERISTY HEIGHTS
CONDOMINIUM ASSOCIATION
II, INC.,

    Defendant-Respondent.

_____

Argued June 8, 2022 – Decided July 6, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7170-20.

Matthew McFarlane, appellant, argued the cause pro se.

Jonathan Stuckel argued the cause for respondent (Marks, O'Neill, O'Brien Doherty & Kelly, PC, attorneys; Christian M. Scheuerman and Christian E. Fisher, on the brief).

PER CURIAM

This appeal arises out of a dispute between plaintiff Matthew MacFarlane, a unit owner at Society Hill at University Heights condominium complex in Newark, and defendant Society Hill at University Heights Condominium Association II, Inc. (Association), concerning the election of the Association's Board of Trustees (Board). After defendant redacted the candidate biography plaintiff had submitted to the Association in connection with his failed attempt to be elected to the Board at the annual October 20, 2020 election, plaintiff sued. In his complaint, plaintiff alleged defendant performed an unlawful act by redacting his biography on the false premise that it contained "defamatory" and "slanderous" material. Plaintiff filed an order to show cause (OTSC), seeking to: 1) void the October 20, 2020 election and conduct a new election; 2) direct the removal of a trustee; and 3) require the production of various corporate records from defendant.

In a January 25, 2021 order, the trial judge denied plaintiff's request for injunctive relief, finding that plaintiff failed to meet the requisite standard under Crowe v. De Gioia, 90 N.J. 126 (1982). Thereafter, defendant moved to compel alternative dispute resolution (ADR) pursuant to a provision of the Condominium Act, N.J.S.A. 46:8B-1 to -38. In an April 13, 2021 order, the judge granted defendant's motion and dismissed plaintiff's complaint without

prejudice to allow the parties to complete ADR. Plaintiff now appeals from both the January 25 and April 13, 2021 orders, arguing:

> THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S APPLICATION FOR INJUNCTIVE RELIEF.
>
> THE TRIAL COURT ERRED IN DISMISSING THIS CASE AND ORDERING ADR.

After carefully reviewing the record and considering the applicable legal principles, we affirm both orders.

We glean these facts from the record. Plaintiff is a unit owner and member of the Association. On or about May 25, 2020, a call for candidates was sent to Association members, including plaintiff, requesting nominations to the Board by June 19, 2020, for the annual election meeting, originally scheduled for July 22, 2020. Candidates were asked to provide a brief "[c]andidate [r]esume" to be included with the annual meeting notice.

On June 19, 2020, plaintiff submitted his "candidate resume/biography" to defendant in support of his nomination for election to the board. Several days later, defendant contacted plaintiff through its managing agent and informed him that his biography could not be printed as received because it allegedly contained "defamatory/slanderous material," including "statements alleging negligent towing, illegitimate fining, and criminal behavior" by the Association.

3

Defendant advised plaintiff that if he removed the offending language, his revised biography would be distributed.

Over the next several days, the parties exchanged numerous contentious emails. Plaintiff asserted that the statements in his resume were "fundamentally true and correct" and claimed his free speech rights protected the statements. He also stated that "the burden of proof [wa]s on the Association to demonstrate in a clear and convincing manner, at a hearing . . . consistent with the principles of due process of law, that any statement in [his] bio[graphy] was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Citing Section 4.02 of the Association bylaws, plaintiff asserted "the [A]ssociation [wa]s precluded from disallowing [his] bio[graphy] until [he] had an opportunity for a hearing."

Section 4.02 of the Association bylaws states:

> Suspension of Rights. The membership and voting rights of any Member and/or tenant may be suspended by the Board for any period during which any assessment against the Unit to which his membership is appurtenant remains unpaid; but upon payment of such assessments, and any interest accrued thereon, whether by check or cash, his rights and privileges shall be immediately and automatically restored. Further, if Rules and Regulations governing the use of the Common elements and the conduct of persons thereon have been adopted and published, the rights and privileges of any person in violation thereof may be

4

suspended at the discretion of the Board for a period not to exceed thirty (30) days for any single non-continuous violation. If the violation is of a continuing nature, such rights and privileges may be suspended indefinitely until such time as the violation is abated. No such action shall be taken by the Board until the Unit Owner and/or tenant is afforded an opportunity for a hearing which is consistent with the principles of due process of law.

Defendant responded that Section 4.02 dealt with rescinding membership rights of "delinquent unit owners" and had "no relevance" to the matter at hand. Defendant refused to send out plaintiff's biography as submitted, explaining it would not expose "unit owners to a suit for defamation." Instead, defendant sent out a redacted version of plaintiff's biography "alongside each meeting notice."

Prior to the election, the Association President tendered her resignation, creating an additional Board vacancy. However, at a September 22, 2020 open meeting, the Association ratified a motion rejecting the resignation. On October 20, 2020, defendant held its annual election and plaintiff was not elected. The following day, plaintiff filed a complaint alleging defendant had: (1) "performed an ultra vires audit of . . . [p]laintiff's election bio[graphy]"; (2) "claimed, without evidence, that [p]laintiff's bio[graphy] contained 'defamatory/slanderous . . . material'"; and (3) "redacted [p]laintiff's bio[graphy] . . . , publishing it with other candidates' unredacted bio[graphies]

as part of the meeting notice" without affording plaintiff "a hearing as required by Association bylaws ([S]ection 4.02)" or conducting "a binding vote . . . per N.J.S.A. 45:22A-46."[1]  Plaintiff sought "declaratory relief pursuant to N.J.S.A. 15A:5-23," to "void the results of the October 20, 2020 election"; and "[t]he share of [d]efendant's litigation expenses paid by [p]laintiff as common charges pursuant to [S]ection 5.11V of the Association bylaws."  Plaintiff also sought "[p]unitive damages up to $350,000."

Subsequently, on October 22, 2020, plaintiff made a request to defendant pursuant to N.J.S.A. 15A:5-24 for various records, including "[t]he membership list"; "[t]he minutes book"; "[t]he prior [twelve] months of financial records"; and "[b]allots from the October 20 annual election meeting."  On November 19, 2020, plaintiff filed an order to show cause seeking to:  1) void the October 20, 2020 election and conduct a new election; 2) order "the removal of [the] trustee who had proffered her resignation"; and 3) require "the production of various corporate records" from defendant that plaintiff alleged "were being unlawfully withheld."

---

[1]  See N.J.S.A. 45:22A-46 (setting out the requirements for condominium association meetings at which binding votes will be taken).

On January 25, 2021, the judge heard oral argument on the OTSC. Plaintiff argued that emergent relief was warranted because the Association was not "fulfilling its duties." Defendant countered that plaintiff failed to articulate any "irreparable harm" and his argument lacked merit. Specifically, defendant argued "there [was] no evidence that [plaintiff] was silenced" by having his candidate biography redacted because plaintiff had other "mechanism[s] such as social meetings to get his word out." According to defendant, the biography was intended "to articulate who you are and . . . your past experience," and should not "be defamatory."

The judge denied plaintiff's application for injunctive relief, finding plaintiff failed to establish either irreparable harm or a likelihood of success on the merits as enunciated in Crowe. Defendant then moved to dismiss the complaint without prejudice so that the parties could pursue ADR pursuant to the Condominium Act. On April 13, 2021, following oral argument, the judge granted defendant's motion and dismissed the complaint without prejudice.

In an oral decision, the judge stated the issue was "not about the substance of the complaint," but rather whether it was proper "to dismiss the complaint without prejudice to allow it to proceed through [ADR]" pursuant to N.J.S.A. 46:8B-14(k). First, referring to an earlier July 2020 arbitration between the

7

parties, the judge determined the prior matter was unrelated and did not adjudicate the "specific issue" governing this claim.

Next, the judge explained that Section 4.02 of the Association bylaws on which plaintiff relied did not apply to this matter because that section referred to "suspension of membership and voting rights" based on a "delinquency in payment of assessments," which was not the case here. Third, the judge rejected plaintiff's contention that "the election issue . . . harmed the entire association," and determined instead that this was "an individual matter," rather than a derivative claim. Finally, the judge found that because the dispute between the parties "clearly . . . relate[d] to the parties' condominium relationship," it fell within the purview of the Condominium Act and there were no compelling circumstances warranting a different outcome. This appeal followed.

We begin by addressing plaintiff's contention that the judge erred in denying injunctive relief.

> In determining whether to grant a preliminary injunction, a trial court must consider (1) whether an injunction is "necessary to prevent irreparable harm"; (2) whether "the legal right underlying [the applicant's] claim is unsettled"; (3) whether the applicant has made "a preliminary showing of a reasonable probability of ultimate success on the merits"; and (4) "the relative hardship to the parties in granting or denying [injunctive] relief."

> [Rinaldo v. RLR Inv., LLC, 387 N.J. Super. 387, 395 (App. Div. 2006) (alterations in original) (quoting Crowe, 90 N.J. at 132-34).]

See also Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013) (reaffirming the Crowe factors).

The moving party has the burden to establish each of the Crowe factors by clear and convincing evidence, Brown v. City of Paterson, 424 N.J. Super. 176, 183 (App. Div. 2012), and we review a trial court's decision to grant or deny a preliminary injunction for an abuse of discretion. Id. at 182. A court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, we discern no abuse of discretion. The judge applied the correct standard and properly concluded plaintiff failed to show a reasonable probability of ultimate success on the merits or the immediate threat of irreparable harm. See Subcarrier Commc'ns, Inc. v. Day, 299 N.J. Super. 634, 638 (App. Div. 1997) (explaining irreparable harm means the movant "must have no adequate remedy at law"). Plaintiff argues that because his complaint invoked N.J.S.A. 15A:5-23, which provides for the review of elections "by the Superior Court in

a summary manner," the Crowe factors do not apply. However, N.J.S.A. 15A:5-23 provides no support for plaintiff's contention.

Next, to address plaintiff's challenge to the judge's interpretation and application of the Condominium Act, we must interpret the scope of the ADR provision contained in N.J.S.A. 46:8B–14(k). "Our task in statutory interpretation is to determine and effectuate the Legislature's intent." Newfield Fire Co. No. 1 v. Borough of Newfield, 439 N.J. Super. 202, 209 (App. Div. 2015) (quoting In re Petition for Referendum on Trenton Ordinance 09–02, 201 N.J. 349, 358 (2010)). In doing so, our starting point is the plain language of the statute itself, giving that language its ordinary meaning. McGovern v. Rutgers, 211 N.J. 94, 108 (2014). Only where a provision's language is ambiguous do we look to extrinsic sources, such as legislative history, to glean its intended thrust. See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009). "[A]n issue of statutory interpretation is a question of law," and our review is therefore de novo, owing no deference to the trial court's legal determinations. McGovern, 211 N.J. at 108.

Turning to the statute at issue, Section 14(k) of the Condominium Act provides, in pertinent part: "A[ ] [condominium] association shall provide a fair and efficient procedure for the resolution of housing-related disputes between

individual unit owners and the association, and between unit owners, which shall be readily available as an alternative to litigation." N.J.S.A. 46:8B-14(k). In Finderne Heights Condominium Association v. Rabinowitz, 390 N.J. Super. 154 (App. Div. 2007), we interpreted that language as compelling dismissal without prejudice in favor of ADR where, subsequent to the filing of a covered suit, a party elected ADR. Id. at 163-64.

We stated:

> Generally, should an appropriate party seek ADR under N.J.S.A. 46:8B-14(k) after suit is filed, absent some compelling circumstances, the trial judge should dismiss the matter without prejudice and require it be submitted for alternative dispute resolution. We recognize, however, that there may certainly be instances in which the trial judge, in an appropriate exercise of discretion, may refuse to dismiss the action and send it to alternate dispute resolution. The compelling circumstances which may cause a court to bypass ADR would include an immediate threat to the safety of others or an immediate and substantial threat to property.
>
> This approach is consistent with both sections of the Condominium Act, recognizes the public policy favoring alternative dispute resolution and is consistent with our view that "[l]itigation should be a last resort, not a first one."
>
> [Id. at 164 (quoting Billig v. Buckingham Towers Condo. Ass'n., 287 N.J. Super. 551, 564 (App. Div. 1996)).]

11

In Bell Tower Condominium Association v. Haffert, 423 N.J. Super. 507 (App. Div. 2012), we reaffirmed that interpretation of the Condominium Act's ADR provision. Regarding its intended scope, we framed the seminal question as "whether the dispute between the parties is a 'housing-related dispute []' within the meaning of N.J.S.A. 46:8B14(k)." Id. at 516 (alteration in original). In light of New Jersey's strong public policy favoring arbitration and "the Legislature's failure to impose any limitations or conditions upon an association's or a unit owner's right to pursue arbitration to resolve 'housing-related disputes,'" we concluded, so long as the dispute "arise[s] from the parties' condominium relationship," an association or a unit owner may, pursuant to N.J.S.A. 46:8B–14(k), demand submission of such disputes to ADR in lieu of proceeding in court. Id. at 516-17.

Acknowledging that "[a]ny other dispute would be resolved either in the Law Division or in the municipal courts," we provided the following non-exhaustive list of examples of non-"'housing related disputes' within the meaning of N.J.S.A. 46:8B-14(k)":

> an auto accident in the condominium parking lot, a commercial dispute arising from a failed business venture between two unit owners, a palimony claim asserted by one unit owner against another, a legal or medical malpractice claim against another unit owner, a crime or disorderly persons offense committed by one

12

owner against another, or any dispute that does not arise directly from the parties' condominium relationship.

[Id. at 517.]

As such, we held the dispute between the condominium association and the individual owners over the levying of special assessments to fund necessary improvements was a "housing-related dispute" within the ambit of the Condominium Act's ADR provision. Id. at 517-18.

Here, we agree with the judge's interpretation and application of N.J.S.A. 46:8B–14(k). As the present dispute is inextricably linked to and arises from the parties' condominium relationship, the judge properly found that the ADR mandate was applicable and dismissed plaintiff's complaint without prejudice to allow the parties to complete ADR. We reject plaintiff's claim that defendant's request for ADR is barred by the earlier July 2020 ADR between the parties. The judge expressly found that the issues involved in the earlier ADR proceeding were unrelated. Likewise, we reject plaintiff's contention that defendant waived its right to ADR when it denied his request for a hearing under Section 4.02 of the Association bylaws. As the judge explained, Section 4.02 had no relevance to the matter at hand.

A-2792-20

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2792-20